OPINION OF THE COURT
Alexander, J.
 We hold today that the People are under no obligation to charge the Grand Jury with respect to a potential defense of mental disease or defect, and therefore have no duty to present to the Grand Jury evidence within their possession of defendant’s psychiatric history in support of such a charge.
I.
On October 21, 1984, Peter Lancaster, while a patient at the Hutchings Psychiatric Center in Syracuse pursuant to a CPL article 330 commitment order,[1] allegedly beat and choked another patient without provocation. Employees at the facility restrained the defendant before he was able to inflict further injury. The defendant was arraigned initially on a misdemeanor charge of assault in the third degree (Penal Law § 120.00 [1]), and ordered committed for a mental competency examination pursuant to CPL 730.30 (1). Thereafter, the Peo *23 pie notified defendant they were presenting the case to the Grand Jury, at which time defense counsel informed the prosecutor that defendant was incoherent and assaultive and would not be able to intelligently exercise his right to appear before the Grand Jury (CPL 190.50 [5]).[2] The defendant’s mental state notwithstanding, the People presented its case to the Grand Jury pursuant to CPL 730.40 (3) which provides in pertinent part that when a court has committed an accused by temporary order of observation, and the People subsequently elect to present the charges to the Grand Jury, such Grand Jury need not hear the defendant as it ordinarily must under CPL 190.50. The People presented testimony from the victim and certain employees and patients at the facility. Neither the defendant, nor anyone on his behalf, testified before the Grand Jury, and the People did not present any evidence of defendant’s psychiatric history, his mental condition at the time of the offense, or the fact that he was a patient at the facility pursuant to a previous verdict of not guilty by reason of mental disease or defect. The People did, however, charge the Grand Jury that they may presume the defendant’s sanity, that such presumption is rebuttable by evidence showing the defendant was insane at the time of the offense and further instructed the Grand Jury as to the defense of mental disease or defect as that defense was defined in Penal Law former § 30.05, which was applicable at the time (Penal Law former § 30.05, repealed Nov. 1, 1984, reenacted as an affirmative defense Penal Law § 40.15).[3] Defendant was indicted for *24 attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), assault in the second degree (Penal Law § 120.05 [1]) and assault in the third degree (Penal Law § 120.00 [1]).
Based upon psychiatric examination reports, the trial court subsequently determined that defendant lacked the capacity to understand the proceedings against him and was unable to assist in his own defense and ordered him committed to the Mid-Hudson Psychiatric Facility, where he remained for over five months until he was determined competent to proceed (CPL 730.50).[4] When defendant was deemed competent, he moved to dismiss the pending indictment (CPL 210.20 [1] [c]) on the grounds that the People had wrongfully withheld from the Grand Jury evidence within their possession of his psychiatric history, which would have supported a potential defense of insanity or would have tended to negate the requisite intent element of the charged crimes; that the indictment was invalid because his condition precluded him from exercising his right under CPL 190;50 (5) (a) to appear before the Grand Jury in that he was legally incompetent during the time the case was presented to the Grand Jury; and that the evidence submitted to the Grand Jury was not legally sufficient to sustain the indictment.
Trial court dismissed the counts of attempted murder and second degree assault for insufficient evidence. The Appellate Division reinstated both counts, finding the evidence sufficient to sustain all three counts of the indictment and holding, on the authority of People v Valles (62 NY2d 36), that the People were justified in relying on the presumption of sanity to establish a prima facie case before the Grand Jury and therefore had no duty to instruct the Grand Jury as to a possible defense of mental disease or defect because the determination that a person is not responsible by reason of mental disease or defect is not within the province of the Grand Jury (114 AD2d 92). The case is before us by leave of a Judge of *25 this court (67 NY2d 945). For the reasons that follow we affirm the order of the Appellate Division.
II.
Article I, § 6 of our State Constitution guarantees that "[n]o person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury” (NY Const, art I, § 6; People v Ford, 62 NY2d 275, 280; People v Iannone, 45 NY2d 589, 594). The traditional purpose of the Grand Jury is to prevent prosecutorial excess by ensuring that "before an individual may be publicly accused of crime and put to the onerous task of defending himself from such accusations, the State must convince a Grand Jury composed of the accused’s peers that there exists sufficient evidence and legal reason to believe the accused guilty” (People v Iannone, 45 NY2d 589, 594, supra; see, People v Ford, 62 NY2d 275, 282, supra). Accordingly, we have long recognized the Grand Jury performs the dual function of investigating criminal activity to determine whether sufficient evidence exists to accuse a citizen of a crime, and of protecting individuals from needless and unfounded prosecutions (People v Pelchat, 62 NY2d 97, 104; People v Ford, 62 NY2d 275, 282, supra; Matter of Additional Jan. 1979 Grand Jury v Doe, 50 NY2d 14, 19; People v Iannone, 45 NY2d 589, 594, supra; People v Calbud, Inc., 49 NY2d 389, 396; People v Johnson, 20 NY2d 220, 225; see also, United States v Calandra, 414 US 338, 343; United States v Dionisio, 410 US 1, 16-17; Wood v Georgia, 370 US 375, 390; Costello v United States, 350 US 359, 362). In order to further the safeguards of indictment by Grand Jury and to enable that body to fulfill its functions, the Grand Jury is accorded broad investigative powers (CPL art 190; Matter of Stem v Morgenthau, 62 NY2d 331, 336) and ought to be well informed concerning the circumstances of the case before it, for the Grand Jury exercises its discretion not only in determining that legally sufficient evidence and reasonable grounds exist to force the accused to trial on the merits, but also in charging a greater or lesser offense, or in charging a single or numerous counts (Vasquez v Hillery, 474 US 274, —, 106 S Ct 617, 623; People v Valles, 62 NY2d 36, 40, supra [Kaye, J., concurring]).
The People generally enjoy wide discretion in presenting their case to the Grand Jury (People v Rockwell, 97 AD2d 853) and are not obligated to search for evidence favorable to the *26 defense or to present all evidence in their possession that is favorable to the accused (People v Isla, 96 AD2d 789) even though such information undeniably would allow the Grand Jury to make a more informed determination. In the ordinary case, it is the defendant who, through the exercise of his own right to testify and have others called to testify on his behalf before the Grand Jury (CPL 190.50 [5], [6]), brings exculpatory evidence to the attention of the Grand Jury. Except to the limited extent that CPL 190.50 (5), (6) gives the accused the right to present such testimony, the Grand Jury proceeding is not intended to be an adversary proceeding (People v Brewster, 63 NY2d 419, 422). The Grand Jury and the petit jury are different bodies with different functions, and the People do not have the same burden of proof before the Grand Jury (CPL 190.65 [1], on evidence submitted by the People, Grand Jury must find reasonable cause to believe accused committed a crime) as they have before the petit jury (CPL 300.10 [2], on evidence submitted by People, petit jury must find proof of guilt beyond a reasonable doubt). Neither do the People have the same obligation of disclosure at the Grand Jury stage as they have at the trial stage (see, Brady v Maryland, 373 US 83; People v Hill, 122 Misc 2d 895, 897).
The prosecutor’s discretion in presenting the case to the Grand Jury, however, is not unbounded, for it is settled that at a Grand Jury proceeding, the prosecutor performs the dual role of advocate and public officer, charged with the duty not only to secure indictments but also to see that justice is done; "as a public officer he owes a duty of fair dealing to the accused and candor to the courts” (People v Pelchat, 62 NY2d 97, 105, supra). The prosecutor’s duty of fair dealing extends not only to the submission of evidence, but also to instructions on the law, for, by statute, responsibility for instructing the Grand Jury on the law rests solely with the court and the prosecutor, and the Grand Jury may not seek legal advice from any other source (CPL 190.25 [6]; People v Di Falco, 44 NY2d 482, 486-487; Matter of Report of Special Grand Jury, 77 AD2d 199, 202). While generally the prosecutor is required to instruct the Grand Jury on the law with respect to the matters before it (CPL 190.25 [6]; People v Valles, 62 NY2d 36, 38, supra), we have held that he need not instruct the Grand Jury as to every conceivable defense suggested by the evidence, but ordinarily need instruct only as to those "complete” defenses which the evidence will support (People v Valles, 62 NY2d 36, 39, supra).
*27 Defendant maintains that because the defense of mental disease or defect is a complete defense, Valles requires that the prosecutor must instruct the Grand Jury as to that defense. Moreover, because the Grand Jury here was instructed as to the defense of mental disease or defect, defendant essentially argues that Valles implicitly imposes a concomitant duty upon the prosecutor to present to the Grand Jury such evidence within his possession as would support such a defense. Especially is this true here, defendant argues, because his mental incompetency prevented him from exercising his right to appear before the Grand Jury and to present that evidence. Thus, according to defendant, had the People fulfilled their duty to disclose his psychiatric history to the Grand Jury, that body would have had the opportunity to fulfill its function of determining whether he should be held to answer charges for which he may not be criminally responsible.
In Valles, we held that the People properly instructed the Grand Jury as to the complete defense of justification, but were not required to give instructions as to the mitigating defense of extreme emotional disturbance, even though that defense was also suggested by the evidence. We said the extent of the prosecutor’s obligation to instruct the Grand Jury on a particular defense depends upon whether that defense has the "potential for eliminating a needless or unfounded prosecution” (People v Valles, 62 NY2d 36, 38, supra). We further explained that a helpful approach for this purpose would be to distinguish between exculpatory and mitigating defenses, exculpatory defenses being complete defenses because, if believed, they would result in a finding of no criminal liability (People v Valles, 62 NY2d 36, 38, supra). To require instruction on complete defenses is to assist the Grand Jury in its function of protecting citizens from unfounded prosecutions, and consideration of such defenses therefore ordinarily rests within that body’s proper domain (People v Valles, 62 NY2d 36, 38-39, supra).
Valles does not require that every complete defense suggested by the evidence be charged to the Grand Jury; rather "whether a particular defense need be charged depends upon its potential for eliminating a needless or unfounded prosecution” (People v Valles, 62 NY2d 36, 38, supra). Thus, the defense of justification, for example, if proven, not only relieves a defendant of criminal liability in that his conduct is *28 by statute deemed not criminal (see, Penal Law art 35; People v McManus, 67 NY2d 541, 548), but it also demands his immediate release (see, CPL 330.10). Accordingly, where evidence establishes a potential defense of justification, prosecution may be needless and the Grand Jury should be charged on the law regarding that potential defense because its consideration is properly within that body’s province (People v Valles, 62 NY2d 36, supra).
On the other hand, although the defense of mental disease or defect, also may be properly considered a complete defense in the sense that, if believed, it would relieve the defendant of responsibility for his otherwise criminal conduct, it is nevertheless a defense of a unique and specific nature — the defense of mental disease or defect does not have the potential for eliminating a "needless or unfounded prosecution”. Indeed, where evidence suggests a defendant suffered a mental disease or defect at the time of the offense, prosecution for the crime is necessary so that a determination may be made as to whether the defendant is to be relieved of criminal responsibility for his conduct and what the consequences of such a determination will be. While it is true that this defense reflects society’s recognition that a person suffering from mental disease or defect which deprives him of substantial capacity to know or appreciate either the nature and consequences of his conduct or that such conduct was wrong, ought not be held criminally responsible for that conduct and subjected to traditional punishment (see, Penal Law former § 30.05, reenacted Penal Law § 40.15), the legislatively mandated consequences of a successful interposition of the defense equally reflect society’s legitimate interest in knowing whether the defendant is and will continue to be a threat to himself or others because of that mental disease or defect. Where a defendant is adjudicated not responsible by reason of mental disease or defect, he is not at liberty to leave the courtroom, but is subject to immediate detention pursuant to CPL 330.10 (2) and 330.20.
The Legislature has provided for mandatory commitment procedures to follow upon a verdict of not guilty by reason of mental disease or defect. CPL 330.10 (2) provides that "[u]pon a verdict of not responsible by reason of mental disease or defect, the provisions of section 330.20 * * * shall govern all subsequent proceedings against the defendant”. CPL 330.20 provides that the court must immediately issue an examination order (CPL 330.20 [2]); that the court must direct that the *29 defendant be committed to the custody of the Commissioner of Mental Health for the purpose of conducting such examination (CPL 330.20 [3]); and that the court must conduct an initial hearing after the examination reports are submitted to determine whether the defendant has a dangerous mental disorder, in which case criminal commitment must ensue, or whether the defendant does not have a dangerous mental disorder but is mentally ill, in which case civil commitment must ensue (CPL 330.20 [6], [7]; emphasis supplied throughout).[5]
To require instruction to the Grand Jury on the defense of mental disease or defect would be to implicitly accord that body the latitude of electing not to indict an accused based upon the potential assertion of that defense. A Grand Jury dismissal of charges based upon that ground would circumvent the statutory provisions controlling the commitment of those adjudicated not responsible by reason of mental disease or defect and would frustrate the clear intent of the Legislature that a determination of not responsible by reason of mental disease or defect necessarily result, at least initially, in commitment and psychiatric examination. Moreover, the defense of mental disease or defect presupposes a finding of factual guilt — a finding that the defendant committed the act —before it may be determined that he will not be held criminally responsible for that act (see, e.g., 1 CJI [NY] p 820). It is the petit jury, and not the Grand Jury, that is empowered to make such determinations of guilt (People v Calbud, Inc., 49 NY2d 389, 396, supra; see, People v Galuppo, 98 Misc 2d 395, 400). We hold, therefore, that consideration of a potential defense of mental disease or defect should rest exclusively with the petit jury.
The defendant’s argument that the People were obligated to present evidence of his psychiatric history, especially since he was incapable of doing so, is without merit. Clearly, if the People have no duty to charge the Grand Jury as to the potential defense of mental disease or defect, they have no duty to present evidence, within their possession, of the defendant’s psychiatric history in support of such a charge. Moreover, inasmuch as it is the proper purpose of an indictment to bring a defendant to trial on a prima facie case, which, if *30 unexplained, would warrant a conviction (People v Brewster, 63 NY2d 419, 422), the People are justified in relying on the presumption of sanity (People v Silver, 33 NY2d 475). Furthermore, evidence of defendant’s psychiatric history would not necessarily have had any relevance to the defendant’s mental state at the time of the offense without expert testimony connecting the defendant’s psychiatric history to the commission of the offense alleged. Thus, submission of defendant’s psychiatric history without more would not have warrantéd a charge on mental disease or defect in any event. We reject defendant’s implicit urging that we impose a duty on the prosecutor to present expert testimony on his behalf where he was not able to do so himself. As we have said, the prosecutor does not have the obligation to present all evidence to a Grand Jury that is favorable to the accused, nor does he have the obligation to present evidence that requires the weighing of competing expert testimony. A Grand Jury proceeding is not a "mini trial” (People v Brewster, 63 NY2d 419, 422, supra), but a proceeding convened primarily " 'to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to a criminal prosecution’ ” (People v Valles, 62 NY2d 36, 38, supra).
Defendant urges that the evidence of his psychiatric history nonetheless should have been presented, if not in support of an instruction on the defense of mental disease or defect, then as evidence tending to negate his intent to commit the crimes charged (see, People v Segal, 54 NY2d 58, 66). We have said in Valles, however, that where a defense is urged in mitigation, the effort is not to avoid criminal liability entirely, but to attempt to reduce the gravity of the offense committed (People v Valles, 62 NY2d 36, 39, supra). Therefore, notwithstanding the Grand Jury’s prerogative to charge a greater or lesser offense, or to charge a single or numerous counts, because the prosecutor is "free to seek an indictment for the highest crime the evidence will support”, the prosecutor is under no duty to instruct the Grand Jury as to mitigating defenses (People v Valles, 62 NY2d 36, 39, supra).
III.
Defendant also argues that the indictment should be dismissed because he was legally incompetent during the time the case was presented to the Grand Jury and was thereby *31 precluded from exercising his right under CPL 190.50 (5) (a) to appear and testify before the Grand Jury. We agree with the Appellate Division that CPL 730.40 (3) clearly authorizes presentation of a case to the Grand Jury while a defendant is committed pursuant to a temporary order of observation and provides that, under those circumstances, the Grand Jury need not hear the defendant as it ordinarily must pursuant to CPL 190.50. To the extent the defendant raises an equal protection challenge to CPL 730.40, that argument was not preserved for our review (People v Dozier, 52 NY2d 781; People v Thomas, 50 NY2d 467, 471). We have considered defendant’s other arguments and have found them to be without merit. Therefore, based on the foregoing, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Titone and Hancock, Jr., concur.
Order affirmed.

.The defendant had been found not guilty by reason of mental disease or defect as a result of a prior unrelated oifense and committed pursuant to CPL 330.10 (2) and CPL 330.20 which delineate the procedures to be followed upon such a verdict.

.CPL 190.50 (5) (a) provides in pertinent part that "[w]hen a criminal charge against a person is * * * submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf * * * and * * * the district attorney must * * * accord the defendant a reasonable time to exercise his right to appear as a witness therein”.

.The People charged the Grand Jury in pertinent part as follows: "And this is a section of the Penal Law that I would like you to consider. It’s not a separate count, it’s actually a definition. Penal Law section 30.05 is entitled mental disease or defect. Subsection 1 reads: is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity to know or appreciate either: (a) the nature and consequence of such conduct; or (b) that such conduct was wrong. Now, in conjunction with that there is a rebuttable presumption that you may consider. Sanity is the normal and usual condition of mankind. You may presume that every individual is sane. However, that presumption may be rebutted by credible evidence showing that the individual is insane. Okay? Now, with respect to intent and with respect to insanity or mental disease and defect, you may determine intent, sanity or insanity from the individual’s conduct before, during and after the commission of the offense.”

.While defendant was at the Mid-Hudson Facility, the court, upon the People’s application, amended its underlying CPL article 330 commitment order, finding defendant was suffering from a "dangerous mental disorder”, defined in CPL 330.20 (1) (c) as existing where a defendant suffering from a mental illness, who because of such condition, currently constitutes a physical danger to himSelf and others. Such a finding results in commitment to a secure facility. During the CPL 330.20 hearings following the prior verdict of not guilty by reason of mental disease or defect, the court had found originally that defendant did not suffer from a "dangerous mental disorder”, but suffered from a "mental illness”, which permits retention in a nonsecure facility (CPL 330.20 [9], [11]).

.Only after it has been determined by the Commissioner of Mental Health and the court that defendant is no longer suffering from a menta’ disease or defect may he be released.