OPINION OF THE COURT
Alan D. Marrus, J.
*77 The District Attorney sought and. obtained a superseding indictment in this case. The prior indictment, now dismissed as superseded, charged the defendant with rape in the first degree, sexual abuse in the first degree, incest and endangering the welfare of a child.
The present indictment includes the same charges but adds charges of rape in the third degree and sexual abuse in the third degree.
An inspection of the minutes of the Grand Jury proceeding which resulted in the new indictment reveals that the complainant admitted committing perjury when she testified before the first Grand Jury.
The first time she testified, the complainant told the Grand Jury that on November 23, 1996, while at her cousin’s house, "I happened to see my uncle, and he had called — he had told me to go upstairs to his house, and I was like, you know, for what?” She further testified that when she went to his house after he summoned her, her uncle, the defendant, forced her to engage in sexual intercourse with him after she repeatedly refused to do so.
When the complainant testified before the second Grand Jury, however, she testified that after initially refusing the defendant’s requests to have sex, "I finally agreed. Not wanting to but I finally agreed, just to get it over with. I said, 'Come on let’s just get it over with’.” When the complainant learned that the defendant did not have a condom, however, she testified that she told him, "Forget it.” According to the complainant, the defendant then forced her to engage in sexual intercourse anyway.
The second Grand Jury learned of the disparity in the complainant’s two accounts through the complainant’s own description of the differing versions:
"q. Did there come a time that you testified in the Grand Jury on another occasion in regards to this case?
"a. Yes.
"q. And did you tell the Grand Jurors, on that occasion, what happened to you?
"a. Yes, but not everything.
"q. What are you telling the Grand Jurors today that you didn’t tell the Grand Jurors on the other occasion?
"a. I told them that I was willing to have sex with my uncle at first but then after, I had said, no. I didn’t tell the last time that I was agreeing to do anything with my uncle.
*78 "q. So today, when you testified before the Grand Jury, you are adding the fact that initially you consented to having sex with him?
"a. Yes.
"q. Besides that, is there anything else different in this — in telling what happened to you today?
"a. Yes.
"q. What else?
"a. Wait. Can you ask that question again?
"q. Sure. Today, you are telling the members of the Grand Jury that your uncle forced you to have sexual intercourse with him, is that correct?
"a. Yes.
"q. When you testified on another occasion, you didn’t tell those Grand Jurors that you at first consented; is that correct? "a. Yes.
"q. Besides that, is the story that you are telling today, the same story that you told the Grand Jurors on other occasions? "a. It’s the same a little bit, yes. It’s the same.
"q. Okay. Why did you [not] tell the other Grand Jurors that at some point, you consented?
"a. Because I was embarrassed to tell them that I was agreeing to have sex with my uncle at first and — because I didn’t think that they would believe me when I said, no, afterwards. "q. Are you telling the truth today?
"a. Yes, I am.
"q. And everything else is the same except that at that point, you had consented initially and then you changed your mind? "a. Yeah.”
Although the District Attorney is to be commended for disclosing to the second Grand Jury that the witness had lied to a prior Grand Jury about the exact same case, the manner in which the prior perjurious testimony was disclosed was defective. Since the second Grand Jury never heard the complainant’s prior sworn testimony, but instead received a summary supplied by the complainant herself, its members were not made aware of additional discrepancies in her two accounts. Contrary to the first time she testified when she claimed her uncle summoned her to his apartment, she told the second Grand Jury that when her cousin suggested the complainant stay overnight with the uncle, "So then I was *79 like, all right. So then I went upstairs and. he opened the door.” The complainant testified before the second Grand Jury that the defendant told her he was mad at her because she had come home late from a party; no such testimony was given to the first Grand Jury. The complainant told the first Grand Jury that the defendant lifted up her "skirt and pulled down my stockings and my underwear and then he had pulled out his penis, and then he put his penis inside my vagina”; the complainant testified before the second Grand Jury that "he took off my stockings because I had a dress on.” The complainant testified before the first Grand Jury that after the attack, the defendant "told me if I tell somebody that he would kill me or something”; she testified before the second Grand Jury that the defendant told her "if I tell anybody that I already knew what would happen. He like gave me a threat.”
This court accepts the principle that evidence which relates to the credibility of a witness is collateral and "generally does not materially influence a Grand Jury investigation” (People v Dillard, 214 AD2d 1028). The District Attorney does, nevertheless, have a duty of "fair dealing” regarding the submission of evidence to a Grand Jury. (See, People v Lancaster, 69 NY2d 20, 26 [1986].) The District Attorney has "wide discretion in presenting evidence to the Grand Jury * * * Of course, in exercising this discretion, the prosecutor must balance the right to present the evidence against the Grand Jury’s right to hear the full story” (People v Kaba, 177 AD2d 506, 508 [2d Dept 1991]). "In his position as a public officer,” the Court of Appeals has observed, the District Attorney "owes a duty of fair dealing to the accused and candor to the courts, a duty he violates when he obtains a conviction based upon evidence he knows to be false.” (People v Pelchat, 62 NY2d 97, 105 [1984].)
Here the District Attorney, with commendable integrity, brought to the attention of the second Grand Jury hearing this case that, in a prior Grand Jury proceeding involving the same alleged crimes, the complainant had testified falsely. The fact of this disclosure was exemplary; the manner of this disclosure was defective. Instead of permitting the grand jurors the opportunity to hear the exact questions and answers of the complainant’s prior account, the prosecutor permitted the witness to summarize and explain the discrepancies between the two accounts herself. Once a prosecutor becomes aware that a witness has perjured herself before the Grand Jury, disclosure of the perjurious testimony to another Grand Jury should be complete and precise.
*80 Although no New York appellate decision directly addresses the issue here, People v Isla (96 AD2d 789 [1st Dept 1983]) is instructive. In that case, the District Attorney offered the inculpatory part of a defendant’s statement as evidence before the Grand Jury, i.e., that he had shot the victim, but left out the exculpatory part that he had done so in self-defense. The Court there declared, "The Grand Jury was entitled to the full story so that it could make an independent decision that probable cause existed to support an indictment” (supra, at 789).
On the element of forcible compulsion, the second Grand Jury did not receive "the full story.” It was not made aware of material changes in the complainant’s account regarding why she went to the defendant’s apartment, whether he was mad at her, the manner of the sexual assault, and whether the defendant explicitly threatened to kill the complainant or made a more nebulous threat. The Grand Jury proceeding was, therefore, defective, and the rape in the first degree and sexual abuse in the first degree counts predicated upon forcible compulsion are dismissed. If the District Attorney is inclined to resubmit these counts to another Grand Jury, leave to resubmit is granted within 45 days of the date of this decision.