People v Chance (2025 NY Slip Op 51639(U))

[*1]

People v Chance

2025 NY Slip Op 51639(U)

Decided on June 24, 2025

Criminal Court Of The City Of New York, Bronx County

Quart, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 24, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
Quasuan Chance, Defendant.

Docket No. CR-017246-24BX

People: Bronx County District Attorney's Office by ADA Naresh Singh
Defendant: The Bronx Defenders by Samantha Reiser, Esq.

Dan Quart, J.

BACKGROUND AND PROCEDURAL HISTORY
On July 6, 2024, defendant and separately apprehended Marquise Isler and Dajuan Thompson were arrested and charged by felony complaint, dated July 6, 2024, with two counts of Criminal Possession of a Weapon in the Second Degree, in violation of Penal Law § 265.03(3), Criminal Possession of a Weapon in the Third Degree, in violation of Penal Law § 265.02(8), two counts of Criminal Possession of a Firearm, in violation of Penal Law § 265.01-b(1), two counts of Criminal Possession of a Weapon in the Fourth Degree, in violation of Penal Law § 265.01(1), Unlawful Possession of Certain Ammunition Feeding Devices, in violation of Penal Law § 265.37, Criminal Possession of a Weapon in the Fourth Degree, in violation of Penal Law § 265.01(9), and two counts of Possession of Ammunition, in violation of Administrative Code of the City of NY § 10-131(i)(3). 
The People presented evidence to a grand jury as to defendant Chance, co-defendant Isler, and co-defendant Thompson. Co-defendant Isler and co-defendant Thompson were both indicted. However, the grand jury voted no action as to defendant Chance. Subsequently, the Honorable Justice Seth Steed granted the People leave to re-present defendant Chase's case to the grand jury. An indictment has not been filed in the instant case.
By affirmation filed on December 9, 2024, the People moved for an order to permit the taking of saliva samples from the defendant Chance for the purpose of DNA analysis. On February 18, 2025, the Honorable Justice Shari R. Michels rendered an oral decision denying the prosecution's motion to compel the taking of Chance's saliva sample for the purpose of DNA analysis, noting that the grand jury heard evidence against defendant Chance, and there was a "hung" jury. Justice Michels granted the prosecution leave to renew their motion to compel a buccal swab from defendant Chance if: (1) the prosecution asserts facts establishing both probable cause that defendant Chance committed a crime, and (2) establishing a clear indication [*2]that relevant material will be found as a result of defendant Chance's DNA comparison testing. See People's Affirmation in Support of Motion, April 21, 2025, Exhibit 2 at 9-10. The matter was then adjourned to March 25, 2025, for Supreme Court arraignment.
During the calendar call on March 25, 2025, the Honorable Justice Kim Parker noted the case remained unindicted as of that date and adjourned the matter to April 8, 2025, for "final [] filing" of indictment—given the People did not concede statutory speedy trial time expiration under CPL § 30.30. During the April 8, 2025 calendar call, the Honorable Justice George R. Villegas inquired of the People, "This hasn't been presented to the Grand Jury?" (People's Affirmation in Support of Motion, April 21, 2025, Exhibit 3 at 3, lines 10-11). The standing Assistant District Attorney responded, "No, your Honor . . . we have to — represent this matter" (id. at 3, lines 12-13). Justice Villegas then inquired, "So, if you never put this case into the Grand Jury, what is it doing here?" (id. at 3, lines 14-15). The standing Assistant District Attorney responded, "well [the assigned assistant district attorney] wants a motion to compel . . . it appeared that this case was put — the Grand Jury must have withdrawn it" (id. at 3, line 16; lines 22-25). Justice Villegas then inquired "How was it withdrawn," to which the People responded, "That I don't know. I'm not the assigned" (id. at 3, lines 24-25; at 4, line 1). Based on the People's record, Justice Villegas declined to grant the People a motion schedule to file a motion to compel defendant Chance's buccal swab, noting "no indictment has been filed, no information . . . indicates it was sent to the Grand Jury. . . . If a Grand Jury indicts him, then I can see, but a Motion to Compel is not decided until this matter is indicted, if it is supposed to be" (id. at 4, lines 2-14).
By affirmation filed on April 21, 2025, the People again move for an order to permit the taking of saliva samples from the defendant Chance for the purpose of DNA analysis. By affirmation filed May 14, 2025, the defendant opposes such motion, arguing the People's motion should be denied. Alternatively, defendant argues that if the Court finds the prosecution has met their state and federal constitutional burden to obtain a search warrant for his saliva sample, this Court should nevertheless hold the request in abeyance until any future omnibus motion for suppression is decided. Separately, in the event the People's instant motion is granted, defendant cross-moves for a protective order limiting the use of defendant Chance's DNA exemplar.
The People allege, in pertinent part, the following in support of their motion to compel a buccal swab from defendant Chance for DNA analysis:
"On July 6, 2024, in the vicinity of Randall Avenue and Rosedale Avenue in Bronx County, police officers observed a grey 2023 Chevrolet Tahoe . . . fail to stop at a stop sign and stop in a pedestrian crosswalk area. The officers also observed the driver of the vehicle, Quasuan Chance, take a drink from an open container that appeared to [be a] bottle of Don Julio. The grey Tahoe was then pulled over by the officers. Before approaching the vehicle, the front passenger, Marquise Isler, was observed making furtive movements, including repeatedly looking over his shoulder at the officers and ducking towards the front passenger floorboard of the vehicle. Upon approaching the vehicle, the officers observed a third passenger, Dajuan Thompson, seated in the rear-passenger seat of the vehicle.
During the officer's investigation, they observed an open Don Julio tequila bottle in the center console area of the vehicle and a cup containing a yellowish liquid, which was an alcoholic beverage. Quasuan Chance, Marquise Isler, and Dajuan Thompson were then asked to exit the vehicle and stand at the back of the vehicle while the officers continued [*3]their investigation.
Officers checked the area of the vehicle where they observed Marquise Isler making the aforementioned furtive movements, and discovered a firearm underneath the front passenger seat. Quasuan Chance, Marquise Isler, and Dajuan Thompson were then placed under arrest and transported back to the 43rd Precinct. Since the vehicle was stopped in the middle of a public roadway and the occupants of the vehicle were arrested, the Police took custody of the vehicle and safeguarded it at the 43rd Precinct. While at the 43rd Precinct, an inventory search of the grey Tahoe was conducted. During this inventory search, officers uncovered a blue fanny pack underneath the rear passenger seat of the vehicle, where Dajuan Thompson, was seated. Inside of that fanny pack, was a loaded 9mm pistol as well as Defendant Thompson's New Jersey State ID.
Officers also learned that the grey Tahoe was rented to Quasuan Chance. The grey Tahoe was picked up by Quasuan Chance on Wednesday, July 3, 2024, at approximately 3:30 p.m., [in] . . . Lawrenceville, NJ . . . To further the investigation, the New York City Police Department's Evidence Collection Team ("ECT") responded to the 43rd precinct to process the two (2) firearms. ECT officers swabbed three (3) areas on each firearm: the "trigger/trigger guard," the "front/back strap/grips," and the "slide grip grooves." The six (6) swabs were vouchered under Property Clerk Invoice No. 2001366026. The swabs were submitted to the New York City Office of the Chief Medical Examiner ("OCME") Forensic Biology Department of DNA testing and analysis.
On July 7, 2024, the Defendant was arraigned on a felony complaint, charging him with Criminal Possession of a Weapon in the 2nd Degree and lesser included charges for the two (2) firearms that were found in the vehicle. The case was presented to the Grand Jury, however, the Grand Jury could not reach a determination whether to charge or dismiss the case against Defendant Chance. The People sought leave to represent the charges based on DNA results, which was granted by Justice Steed on July 23, 2024" (People's Affirmation in Support of Motion, April 21, 2025 at 2-5, ¶ 4-10).
Subsequently, the Office of the Chief Medical Examiner (hereinafter "OCME") performed DNA analysis on the swabs collected in relation to voucher 2001366026 and assigned the case file the lab number FB24-04729. Following the DNA analysis of the swabs, an OCME Laboratory Report, dated November 4, 2024, was issued. See People's Affirmation in Support of Motion, April 21, 2025, Exhibit 1. The OCME Laboratory Report indicates that, as to swabbing of the "trigger/trigger guard of black Glock," swabbing of the "slide grip grooves of black Glock," swabbing of the "trigger/trigger guard of brown Glock," swabbing of the "front/back strap/side grips of brown Glock," and swabbing of the "slide grip grooves of brown Glock," the DNA profiles of the individual contributors to the mixture(s) were not determined. However, the results are suitable for comparison. As to swabbing of the "front/back strap/side grips of black Glock," the OCME Laboratory Report indicates that, due to laboratory interpretation policies, no interpretation or comparisons were made to this sample. 

THE PARTIES' CONTENTIONS
The People once again move, pursuant to CPL § 245.40(1)(e), seeking a Court order directing defendant Chance to permit the taking of a saliva sample from him for the purpose of [*4]DNA analysis in connection with this case. The People contend that the fact that defendant Chance currently "remains charged by means of a felony compliant, as opposed to an indictment, does not derogate this Court's authority to compel a sample of [defendant Chance's] DNA" (People's Affirmation in Support of Motion to Compel, April 21, 2025, at 6, ¶16, citing People v Rashawn Dixon, Crim Ct, Bronx County, Mar. 28, 2017, Hornstein,J., docket No. 2016BX035409). 
Further, the People claim they have established a sufficient basis to permit the taking of a saliva sample from defendant Chance, in compliance with the requirements set forth in Matter of Abe A., 56 NY2d 288 [1982], because "there is probable cause to believe that the Defendant committed the crimes charged, as evidenced by police observations" (id. at 6, ¶17-18). Additionally, the People contend there is probable cause because, under Penal Law § 265.15(3), "there is a presumption that provides that the presence of a firearm inside of an automobile, other than stolen one or a public omnibus, is presumptive evidence of its possession by all persons occupying the vehicle at the time the weapon is found unless" one of the three statutory exceptions apply. Id. at 6-7, ¶18.
The People do not address in their affirmation how the facts alleged in support of their motion establish a clear indication that relevant, material evidence will be found as a result of defendant Chance's DNA comparison testing. The People do contend that the method of collection used in obtaining a saliva exemplar from defendant Chance does not involve an unreasonable bodily injury, or cause serious physical injury, as "such method of obtaining the sample using a buccal collection device, which consists of a cotton-tipped swab, is undisputedly safe and reliable" (id. at 7, ¶19, citing People v Trocchio, 107 Misc 2d 610 [Suffolk County 1980]).
Defense counsel opposes the People's instant motion on the grounds it is an improper motion to renew under CPLR § 2221(e), arguing that the prosecution already sought—and were twice denied—the procurement of a buccal swab from defendant Chance. Defense counsel argues the People have not met its burden under CPLR § 2221(e)(2) and (3), as the People did not provide a justification for failing to present the "new" facts on its prior motion, specifically because the newly proffered facts were available to the prosecution at the time of its first filing. Defense counsel also contends the prosecution's motion should be denied because the prosecution "failed to demonstrate (1) probable cause to believe that Mr. Chance committed the instant offense, (2) 'clear indication' that material, probative evidence will be found, and (3) that Mr. Chance's forensic profile will have probable worth to the investigation to justify the intrusion" (Defense Memorandum of Law in Support of Affirmation in Opposition to Prosecution's Motion for Order to Compel Saliva Sample for DNA Analysis, at 8).
Defense Counsel further opposes the People's instant motion on the grounds that the motion is untimely as the People failed to act diligently or with good faith in ascertaining "the existence of DNA evidence[,] and to cause such evidence to be available to defense, in violation of CPL §§ 245.10, 245.20, 245.70" (id. at 13). Finally, defense counsel argues the People's instant motion should be held in abeyance until a potential future motion to suppress all physical evidence, including the firearm, is decided. Id. at 15.

LEGAL ANALYSIS
The Court agrees with defense counsel's CPLR § 2221(e) position that: the People did not specifically identify the instant motion as a motion to renew, the People were in possession of [*5]the newly proffered facts prior to the filing of their original motion to compel a buccal swab from the defendant and, the People did not, in their motion to renew, provide a reasonable justification for not offering those facts in their original motion—as is required by CPLR § 2221(e)(1), (2), (3). However, "although renewal motions generally should be based on newly discovered facts that could not be offered on the prior motion (see CPLR 2221[e]), courts have discretion to relax this requirement and to grant such a motion in the interest of justice" Mejia v Nanni, 307 AD2d 870, 871 [1st Dept 2003], citing Daniels v City of New York, 291 AD2d 260 [2002]; Strong v Brookhaven Mrm. Hosp. Med. Ctr., 240 AD2d 726 [1997]). 
The Appellate Division, First Department, has held that:
"while it is true that a motion for leave to renew is intended to direct the court's attention to new or additional facts which, although in existence at the time of the original motion was made, were unknown to the movant and were, therefore, not brought to the court's attention, the rule is not inflexible and the court, in its discretion, may grant renewal, in the interest of justice, upon facts known to the movant at the time of the original motion" (Rancho Santa Fe Ass'n v Dolan-King, 36 AD3d 460, 461 [1st Dept 2007] [internal citations omitted]). 
The First Department, Appellate Division, has further held that "even if the rigorous requirements for renewal are not satisfied, such relief may still be granted so as not to defeat substantive fairness . . . ." (id.). Therefore, defendant's application for the People's instant motion to compel a buccal swab from defendant to be denied as an improper motion to renew under CPLR § 2221(e) is denied.
The People's motion for an order to compel a saliva sample from defendant for the purpose of DNA analysis is decided as follows:
In Matter of Abe A., 56 NY2d 288, 291 [1982], the New York State Court of Appeals set forth the applicable standard governing the issuance of an order to compel an individual to furnish non-testimonial evidence to the prosecution. The Court held that a court order to obtain a blood sample of a suspect is appropriate when the prosecution establishes: (1) probable cause to believe the suspect has committed the crime, (2) a clear indication that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable. Abe A. further requires that, once the People establish the first three prongs, the issuing court must additionally, in balancing the need for a search warrant against any unwarranted intrusion, "weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it . . . against concern for the suspect's constitutional right to be free from bodily intrusion . . . . Only if this stringent standard is met . . . may the intrusion be sustained" (id.).
The three-pronged standard in Abe A. was codified in New York's Criminal Procedure Law § 245.40(1)(e), which prescribes that:
After the filing of an accusatory instrument, and subject to constitutional limitations, the court may, upon motion of the prosecution showing probable cause to believe the defendant has committed the crime, a clear indication that relevant material evidence will be found, and that the method used to secure such evidence is safe and reliable, require a defendant to provide non-testimonial evidence, including to permit the taking of samples of the defendant's blood, and other materials of the defendant's body that involves no unreasonable intrusion thereof.
As to the first prong of the Abe A. test, probable cause "need not be based upon one factor but rather may be gleaned from the totality of the circumstances presented. This collective consideration is essential because individual factors standing alone may be insufficient to support a finding of probable cause" (People v Bigelow, 66 NY2d 417 [1985]). Probable cause is established when it appears "to be at least more probable than not that a crime has taken place and the one arrested is the perpetrator" (People v Carrasquillo, 54 NY2d 248 [1981]).
In the case at bar, the People failed to establish probable cause exists to justify their application to have defendant Chance submit to the taking of a saliva sample for purposes of DNA analysis. The People have not established probable cause to believe that defendant Chance possessed the gun. In the court's February 18, 2025 decision on the People's original motion, Justice Michels held:
" . . . the grand jury evidence against Mr. Chance — heard evidence, rather, and did not come back with an indictment. They're what we call 'hung" on it. This defendant has not been indicted and the law requires the prosecution to assert facts that establish probable cause that the defendant—in this case, Mr. Chance—committed a crime. Reliance on the automobile presumption and bare bones assertions that Mr. Chance was in the same car as the codefendants, Mr. Isler and Mr. Thompson, who have been indicted and add that firearms were recovered from the vehicle in which all three were traveling at the time of their arrest is not sufficient to meet this prong. So, I'm finding that there was no probable cause. That's [] part of the reason why I'm denying the motion to compel DNA for Mr. Chance" (People's Affirmation in Support of Motion to Compel, April 21, 2025, Exhibit 2 at 9, lines 19-25; at 10, lines 1-8).
In the instant motion, the People contend there is "probable cause to believe that the Defendant committed the crimes charged, as evidenced by the police officers' observations" (id. at 6, ¶ 18). However, although defendant Chance was the driver of the car, and the People provide the additional fact that the car was rented in Chance's name, there are no facts indicating the two firearms were found in the vicinity of where Chance was sitting, nor are there any factual allegations indicting the two firearms were observed to be in plain sight. Additionally, there is no indication Chance knew the two firearms were in the vehicle, or that Chance exercised dominion or control over either of the two recovered firearms.
To the contrary, as to the first firearm, facts asserted by the People indicate that, upon police officers checking the "area of the vehicle where they observed [co-defendant] Marquise Isler making [] furtive movements, [police officers] discovered a firearm underneath the front passenger seat" (id. at 3, ¶ 6). Meaning, the first firearm was recovered from underneath the front passenger seat, where co-defendant Isler, not defendant Chance, was seated and observed making furtive movements and ducking towards the front passenger floorboard of the vehicle. As to the second firearm, according to the People, it was recovered upon an inventory search of the vehicle. Specifically, "during the inventory search, officers uncovered a blue fanny pack underneath the rear passenger seat of the vehicle, where [co-defendant] Dajuan Thompson, was seated." Id. The blue fanny pack that was found underneath the rear passenger seat where co-defendant Thompson was seated contained, not only the 9mm pistol, but also co-defendant Thompson's New Jersey State identification card. As such, aside from the single fact that defendant Chance was the driver of the vehicle, and the additional fact proffered by the People that the car was rented in Chance's name, there are no other facts indicating Chance at any point [*6]"exercised dominion and control over the weapon, as is necessary to legally constitute possession" (People v Hayward, 71 Misc 3d 470, 476 [Crim Ct, Bronx County 2021], citing PL § 10.00[8]; People v Ballard, 133 Misc 2d 584 [Sup Ct, NY County 1986]).
Second, the People contend there is a basis to find probable cause under Penal Law § 265.15(3), which provides that "the presence of a firearm inside an automobile, other than a stolen one or a public omnibus, is presumptive evidence of its possession by all persons occupying the vehicle at the time the weapon is found . . . ." (People's Affirmation in Support of Motion to Compel at 6, ¶ 18). As noted in Heyward:
"The 'automobile presumption' codifies the commonsensical conclusion that where a gun is found in a car, that may, but need not, be taken as some evidence that everyone in the car at the time possessed it . . . However the presumption is unconstitutional in the absence of a 'reasonable basis for concluding that the defendant had control over the weapon'" (People v Heyward, 71 Misc 3d 470 [Crim Ct, Bronx County 2021] [internal citation omitted]). 
In the present matter, the People do not proffer any police observations that serve as a reasonable basis to conclude Chance exercised dominion and control over any of the two recovered firearms. 

The People further contend that the fact that defendant Chance is "currently charged by means of a felony complaint, as opposed to an indictment, does not derogate this Court's authority to compel a sample of this DNA" (People's Affirmation in Support of Motion to Compel at 6, ¶ 16, citing People v Rashawn Dixon, Crim Ct, Bronx County, Mar. 28, 2017, Hornstein, J., docket No. 2016BX035409). Additionally, in response to Justice Villega's April 8, 2024 statement, that a "Motion to Compel is not decided until this matter is indicted," the People cite Abe A., to note that a "court order for corporeal evidence, such as a buccal swab, can even precede a formal arrest" (id. at 5, footnote 1). However, unlike in both Rashawn and Abe A., in the instant matter there was no pre-arrest investigation that gave rise to probable cause needed by the police or District Attorney to obtain a warrant for corporeal evidence. Moreover, it was only after the grand jury was unable to decide whether to indict defendant Chance, that the People filed a motion to compel defendant Chance's buccal swab for DNA. As conceded by the People, "the case was presented to the Grand Jury, however, the Grand Jury could not reach a determination whether to charge or dismiss the case against Defendant Chance" (id. at 4, ¶ 9). Meaning, the grand jury, which "performs the dual function of investigating criminal activity to determine whether sufficient evidence exists to accuse a citizen of a crime, and of protecting individuals from needless and unfounded prosecutions," decided not to indict defendant Chance, while voting to indict co-defendant Isler and co-defendant Thompson. See People v Lancaster, 69 NY2d 20, 25 [1986]; see also CPL § 190.05. An indictment by a grand jury:
"is intended to prevent the people of this State from potentially oppressive excesses by the agents of the government in the exercise of the prosecutorial authority vested in the State . . . . Thus, before an individual may be publicly accused of a crime and put to the onerous task of defending himself from such accusations, the State must convince a Grand Jury composed of the accused's peers that there exists sufficient evidence and legal reason to believe the accused is guilty" People v Iannone, 45 NY2d 589, 594 [1978].
Accordingly, since the People have not met the first prong of the Abe A. analysis, nor the [*7]prescribed statutory requirements under CPL § 245.40(1)(e), the People's motion to compel defendant to submit to the taking of a buccal swab sample for the purpose of DNA analysis is denied.
Based on the foregoing, the court need not address defendant's remaining arguments. Defendant's cross-motion for a protective order is rendered moot.
This constitutes the decision and order of this Court. 
Dated: June 24, 2025
Bronx, New York
HON. DAN QUART, J.C.C.