OPINION OF THE COURT
George J. Balbach, J.
Petitioner seeks to quash a Grand Jury subpoena or, in the alternative, modify same by permitting counsel to be present with his client in the Grand Jury room despite the absence of a waiver of immunity.
The petitioner herein allegedly owns a controlling interest in a construction firm which does business with Queens hospitals. On December 22, 1978 a subpoena ad testiñcandum was issued by the office of Charles J. Hynes, Deputy Attorney- *819 General for Nursing Homes, to petitioner on behalf of a Queens County Grand Jury which is conducting an inquiry into hospital operations in this county.
The petitioner challenges the subpoena on the following grounds:
1. That it is defective in that it makes no provision for permitting an attorney for a nonwaiver witness to represent his client before the Grand Jury. Petitioner argues that the newly enacted section, CPL 190.52, is unconstitutional in that it denies the witness who does not sign a waiver of immunity equal protection of the law, and
2. Petitioner further alleges that the purpose of the prosecutor in seeking his appearance before the Grand Jury is not to secure information dealing with the Queens hospital industry but, rather, to obtain a perjury indictment. Therefore, he maintains the subpoena should be quashed on the grounds of prosecutorial abuse.
Turning to petitioner’s first point, the pertinent portions of the challenged statutes read as follows (CPL 190.52):
"1. Any person who appears as a witness and has signed a waiver of immunity in a grand jury proceeding, has a right to an attorney as provided in this section. Such a witness may appear with a retained attorney, or if he is financially unable to obtain counsel, an attorney who shall be assigned by the superior court which impaneled the grand jury. * * *
"2. The attorney for such witness may be present with the witness in the grand jury room. The attorney may advise the witness, but may not otherwise take any part in the proceeding.”
This statute permits a waiver-witness the right to be represented by counsel in the Grand Jury room; conversely, it denies that right to one testifying under a grant of immunity. It is petitioner’s contention that since he does not intend to presently waive immunity, he will be denied his right to an attorney in the Grand Jury room and be discriminated against and denied equal treatment under the Fourteenth Amendment.
-A- EQUAL PROTECTION STANDARDS
The Fourteenth Amendment of our Federal Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws.” Similar lan *820 guage is found in section 11 of article I of the New York State Constitution. The concept of equal protection has not been, and is not susceptible, to precise definition. No hard and fast rules have been laid down and each situation must be judged on its own merits. Nor has any test been formulated which is all-inclusive (Louisville Gas Co. v Coleman, 277 US 32). However, the essence of the right to equal protection of the laws is that all persons similarly situated be treated alike and that no person or class of persons shall be denied the equal protection of the laws which is enjoyed by others in similar circumstances (Kentucky Co. v Paramount Exch., 262 US 544). As stated by our New York Court of Appeals, the rule is that equal protection of the laws is not denied when all persons are " 'treated alike under like circumstances and conditions, both on the privileges conferred and the liabilities imposed’ ” (Matter of Sacharoff v Corsi, 294 NY 305, 312).
In applying the equal protection clause, it has been consistently recognized that this amendment does not deny to States the power to treat different classes of persons in different ways. What it does deny the States is "the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute” (Reed v Reed, 404 US 71, 75-76). In short a "classification must be reasonable, not arbitrary, and it must rest upon some ground of difference having a fair and substantial relation to the object of the legislation” (Royster Guano Co. v Virginia, 253 US 412, 415). To determine then whether the distinction between Grand Jury witnesses in this case is reasonable, this court must evaluate the classification in light of well-established constitutional principles. Within the scope of the Fourteenth Amendment, three standards have evolved in determining the validity of equal protection under the law. Hence the first task of the court is to determine which test is applicable to our present statute.
These tests are:
(1) The "rational basis” standard or minimal rationality which requires only "that the State’s action be rationally based”. (Dandridge v Williams, 397 US 471, 487.)
(2) A "strict scrutiny” test which applies to "suspect” statutes. Representative "suspect” statutes would be those which discriminate on the basis of "race, alienage and national origin” (Frontiero v Richardson, 411 US 677, 682).
*821 (3) Finally, a third "sliding scale” or middle ground test is evolving which heretofore has focused only on the question of "a substantial state interest” (San Antonio School Dist. v Rodriguez, 411 US 1, 98).
In determining the proper standard, this court first discards the middle ground test. This is a speculative doctrine which so far seems to have been applied only in educational discrimination areas (see San Antonio School Dist. v Rodriguez, supra; see, also, Regents of Univ. of Cal. v Bakke, 438 US 265, 357, n 30 — [opn of Mr. Justice Brennan]).
This leads to the rational basis test. As was pointed out in Alevy v Downstate Med. Center (39 NY2d 326, 332): "Most classifications are subject to the lax standard of rationality which tests whether the challenged classification bears a reasonable relationship to some legitimate legislative objective. The test has been applied with great indulgence, especially in the area of economics and social welfare where, for example, it has been said that '[i]f the elassiñeation has some "reasonable basis,” it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality” ’.” (Emphasis supplied.)
This is the test most frequently utilized in cases dealing with equal protection and it is this standard that the respondent urges should be applied in this case.
Petitioner, however, advances the theory that the "strict scrutiny” test is the proper one under the circumstances in this case. As Judge Gabrielli further pointed out in Alevy v Downstate Med. Center (supra, p 322): "Where, however, a statute affects a 'fundamental interest’ or employs a 'suspect’ classification, the strict scrutiny test has been applied. That test requires that the legislative purpose be so compelling as to justify the means utilized. Identified as suspect are classifications based on alienage (Matter of Griffiths, 413 US 717; Sugarman v Dougall, 413 US 634; Graham v Richardson, 403 US 365), national origin (Hernandez v Texas, 347 US 475; Takahashi v Fish & Game Comm., 334 US 410, 418-420), and race (Loving v Virginia, 388 US 1, supra; McLaughlin v Florida, 379 US 184, supra). Fundamental interests include voting (Dunn v Blumstein, 405 US 330; Harper v Virginia Bd. of Elections, 383 US 663), travel (Shapiro v Thompson, 394 US 618), procreation (Skinner v Oklahoma, 316 US 535), the right of free speech (Police Dept, of Chicago v Mosely; 408 US 92), *822 the right of a criminal defendant to appeal (Williams v Illinois, 399 US 235; Griffin v Illinois, 351 US 12)”.
The issue is thus reduced to which test is applicable. This question can be resolved by the process of elimination, that is, if the statute does not fall under the narrow guidelines advanced in the strict scrutiny test, then it must fall under the broader rational analysis. As has been indicated previously, the "strict scrutiny” test must affect either a "suspect classification” or a "fundamental interest”.
Judge Jones, in Matter of Malpica-Orsini (36 NY2d 568, 581, n 2), gives the following concise analysis of what constitutes a "suspect” area. He writes: "Those classifications considered 'suspect’ in the constitutional sense include race (see, e.g., Loving v Virginia, 388 US 1; McLaughlin v Florida, 379 US 184); national origin (Hernandez v Texas, 347 US 475; Oyama v California, 332 US 633); alienage (Matter of Griffiths, 413 US 717; Graham v Richardson, 403 US 365); and possibly sex (Frontiero v Richardson, 411 US 677; cf. Stanton v Stanton, 421 US 7). The character traits of these suspect classifications appear to share a common element — 'an immutable characteristic determined solely by the accident of birth’ (Frontiero v Richardson, supra, p 686).”
Since the witness statute in the present case does not involve race, national origin, sex or alienage, it would appear that the right to counsel in the Grand Jury room does not fall within the category of a suspect classification.
This leads us to the second area. Petitioner argues that CPL 190.52 clearly affects' a "fundamental interest” in that every witness should have the benefit of counsel at a potentially crucial stage of a criminal proceeding without discrimination between waiver and nonwaiver witnesses. This view, in effect, relies on two constitutional principles: (a) The equal treatment of witnesses, before the Grand Jury under the due process clause of the Fourteenth Amendment, and (b) The right of a party to have counsel at a crucial stage of a criminal proceeding under the Sixth Amendment.
In analyzing the Fourteenth Amendment claim, it is to be noted that while the Supreme Court has included voting, travel, procreation and the right of a criminal defendant to appeal, among its category of "fundamental rights”, it never mentioned the right of a witness to be represented by counsel in the Grand Jury room. Indeed, the highest court in United States v Mandujano (425 US 564, 581) specifically denied that *823 such a right existed when it stated: "Respondent was also informed that if he desired he could have the assistance of counsel, but that counsel could not be inside the grand jury room. That statement was plainly a correct recital of the law. No criminal proceedings had been instituted against the respondent, hence the Sixth Amendment right to counsel had not come into play.” Therefore, since there is no constitutional right to counsel in the Grand Jury room, petitioner’s argument fails under the Fourteenth Amendment.
Nor does petitioner find any support under the Sixth Amendment theory of counsel representation at a crucial stage. The law in this area is "firmly established that a person’s Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him” (Kirby v Illinois, 406 US 682, 688). A Grand Jury proceeding has never been deemed a critical stage in a criminal proceeding (United States v Mandujano, supra). Also, in New York, by statute, a Grand Jury proceeding has never been recognized as the "commencement” of "an adversary judicial proceeding” (CPL 1.20, subd 17). Therefore, since petitioner has not established that he is a member of a "suspect classification” or that his "fundamental interests” have been violated, he does not fall under the strict scrutiny test.
-B- THE TEST TO BE APPLIED
Since the subject matter of the classification does not fall under the strict scrutiny test, the statute must be evaluated under the broad rationality theory. Under this standard "a classification must be reasonable, not arbitrary, and have a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike (Reed v Reed, 404 US 71, 75-76; Neale v Hayduk, 35 NY2d 182, 186). A State does not violate the guarantee merely because the classifications made by its laws are imperfect (Dandridge v Williams, 397 US 471, 485), and a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it (McGowan v Maryland, 366 US 420, 426; Matter of Dorn ’H’ v Lawrence IT, 31 NY2d 154, 158).” (Matter of Malpica-Orsini, 36 NY2d 568, 571, supra.)
Petitioner contends that the New York State Legislature realized that it was fundamentally unfair to allow a witness, *824 who has waived immunity, to run the risk of self incrimination in the substantive area of his Grand Jury testimony while other witnesses, granted immunity, never placed themselves in such jeopardy. To alleviate this danger of self incrimination, it is argued, was the sole purpose of CPL 190.52. However, it is further reasoned the presence of counsel in the Grand Jury room not only gives protection against the substantive crimes under investigation, but also alleviates the risk of a witness committing perjury or finding himself in contempt due to the technical nature of his answers. Petitioner thus concludes that the statute creates two distinct sets of benefits. The first is protection against substantive self incrimination; the second is protection against technical violations of the law such as perjury or contempt.
It is this second benefit that petitioner challenges. He contends that the Legislature had only one goal in mind when it enacted the statute and that was to lessen the danger of self incrimination to a nonwaiving witness. It is maintained that the Legislature never authorized the second benefit but nevertheless it exists and constitutes a "bonus” for those people who waive immunity and a detriment to those who do not. Therefore, petitioner argues that the second benefit is unfair and bears no substantial relationship to the original object of the legislation which was simply protection against self incrimination. In essence then, it is claimed that the statute violates due process because it does not extend the benefit of protection against perjury to all witnesses in the Grand Jury room.
In considering this claim of discrimination, the court recognizes that the law vests the Grand Jury with substantial authority because this body’s "investigative power must be broad if its public responsibility is adequately to be discharged” (United States v Calandra, 414 US 338, 344). Indispensable to the exercise of power is the authority to compel the attendance and the testimony of witnesses (Kastigar v United States, 406 US 441), since "the public * * * has a right to every man’s evidence” (United States v Calandra, supra, p 345). This right of inquiry extends to all who may have relevant knowledge and includes those witnesses who themselves may be implicated in improper activities. In order to avoid any Fifth Amendment violations by Grand Jury testimony, all witnesses who give evidence before a New York Grand Jury receive immunity (unless waived). This immunity *825 is "full transactional immunity which immunizes * * * against prosecutions of any and all crimes to which their testimony might relate” (Matter of Anonymous Attorneys, 41 NY2d 506, 510). The general rule then, is that all witnesses who do not waive their rights are immune from prosecution as regards crimes their testimony might reveal. On the other hand, a witness may be called before a Grand Jury and requested to waive his rights to this transactional immunity. This witness enters the Grand Jury room knowing that he is in danger of being prosecuted for substantive crimes and may very well be a target of that body’s investigations. Hence, the Legislature passed this statute to lessen this danger of a nonimmunized witness being prosecuted for substantive crimes.
As was pointed out in People v Riley, 98 Misc 2d 454, in its analysis of the purpose of this bill "it is clear that the Legislature felt that as a matter of fundamental fairness a man should not go into battle unarmed and hence, directed that a waiver-witness should not go into the Grand Jury room without the protection of effective legal counsel.” Effective legal counsel implicitly guarantees a witness the full benefit of a lawyer’s advice so it is quite possible that a witness may well enjoy a degree of protection against possible perjury. However, such an additional benefit in and of itself does not establish discrimination for several reasons.
The first reason is that petitioner is confusing the purpose of the statute with the results of it. As was previously pointed out, the goal of the Legislature was to compensate for the loss of transactional immunity. A grant of counsel does this. Once the right of counsel has been granted a flood of benefits result. The major one, of couse, is protection against self incrimination regarding the substantive crimes that a person is giving information about; another benefit would be alerting against the possibility of perjury; a third might be advice in the area of questions based on "information obtained through an illegal wiretap” (People v McGrath, 46 NY2d 12, 29). The list is endless but because a witness does not enjoy all the benefits of a statute, does not mean discrimination. As Dandridge v Williams (397 US 471, 485, supra) stated: "If the classification has some 'reasonable basis,’ it does not offend the Constitution simply because the classification 'is not made with mathemati *826 cal nicety or because of practice it results in some inequality.’ ”
A second fallacy in petitioner’s argument lies with his equating the protection against self incrimination with the protection against possible perjury. A man has a duty to speak before the Grand Jury but he has a corresponding right to protect himself against self incrimination by asserting his Fifth Amendment testimonial privilege. The courts have recognized that the assertion of this privilege can normally only be effective with the advice of counsel. As the Supreme Court indicated in Maness v Meyers (419 US 449, 466): "The assertion of a testimonial privilege, as of many other rights, often depends upon legal advice from someone who is trained and skilled in the subject matter, and who may offer a more objective opinion. A layman may not be aware of the precise scope, the nuances, and boundaries of his Fifth Amendment privilege. It is not a self-executing mechanism; it can be affirmatively waived, or lost by not asserting it in a timely fashion.”
Thus the Legislature in considering the question of what would constitute a fair exchange for a waiver of immunity came to the conclusion that a lawyer’s presence in the Grand Jury room was a sufficient quid pro quo. However, the same reasoning cannot be applied to a man’s right to be protected against perjury. A witness has no right or duty to speak falsely before a Grand Jury and this knowledge is easily within the scope of the average layman. He does not need the advice of counsel by his side to know when to tell the truth. Thus, the two benefits are clearly not equal. One springs from a constitutional right which is waived. The other springs from neither a right nor a duty since "no witness has a license to testify evasively or falsely before the Grand Jury” (People v McGrath, supra, p 29).
Finally, it might also be noted that a nonwaiver witness enjoys the same right to counsel that he previously enjoyed before passage of the statute, that is, he may request an adjournment of questioning in order to go outside the Grand Jury room and confer with counsel (People v Ianniello, 21 NY2d 418) if a witness has any uncertainty in areas of perjury or contempt he always has the remedy of seeking outside assistance.
 Based upon the above, the petitioner has not established the unreasonableness of the legislative enactment. Fur *827 ther, there is a strong presumption that a statute duly enacted by the Legislature is constitutional, and for a court to declare a law unconstitutional, the invalidity must be demonstrated beyond a reasonable doubt (People v Pagnotta, 25 NY2d 333, 337). Also, the courts of this State will only declare an act of the Legislature unconstitutional when such unconstitutionality is "clear” (Garcia v Pan Amer. Airways, 183 Misc 258, affd 269 App Div 287, affd 295 NY 852, cert den 329 US 741). Since the burden of proving that a statute is unconstitutional is on the defendant (Lindsley v National Carbonic Gas Co., 220 US 61; Matter of Fay, 291 NY 198), this court holds that the petitioner has not met that burden and finds CPL 190.52 constitutional.
-C- THE "PERJURY TRAP”
Petitioner’s second grounds for challenging the subpoena lies in his belief that the Special Prosecutor seeks to have this witness appear before the Grand Jury for the purpose of securing a perjury indictment. In support of this contention the witness’ counsel alleges that in a phone conversation, a representative of the State Attorney-General indicated that he did not find petitioner’s explanation of certain events "to be credible”. Counsel for the witness thereupon asked the State representative to furnish him with the reasons for this conclusion, but the Special Prosecutor refused. In further conversation the Special Attorney-General also had occasion to mention the recent Court of Appeals decision of People v Pomerantz (46 NY2d 240) dealing with the conviction of a defendant charged with committing perjury before a Grand Jury. Based on these facts it is contended that the Special Prosecutor seeks a perjury indictment.
In considering this argument, it is, unfortunately, not unusual for a prosecutor to express doubt as to the credibility of a potential witness and this skepticism may well be inherent in the system itself. However, in and of itself such a personal opinion should have no bearing on the conduct of a prosecutor. In any event, professional courtesy would indicate that such private views on the part of a prosecutor might best be kept to a minimum. Nor should half-remembered telephone calls or routine correspondence furnish material for a mini-trial or assume an importance never intended by either party.
Therefore, based on the evidence before this court, there is no indication that the Special Prosecutor intends to ask *828 questions not relevant to the Grand Jury investigation (cf. People v Tyler, 62 AD2d 136). Accordingly, the allegations are insufficient to support the relief requested (cf. Matter of Kinsella v Andreoli, 95 Misc 2d 915). In any event this relief requested would be premature at this time. The application to quash the Grand Jury subpoena is denied; nor will the court grant the alternate relief of permitting counsel to accompany his client into the Grand Jury room in the absence of waiver.