[835 NE2d 654, 801 NYS2d 794]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GARTH M. HILL, Respondent.

Argued June 9, 2005; decided July 6, 2005

### APPEARANCES OF COUNSEL

*William J. Fitzpatrick, District Attorney*, Syracuse (*James P. Maxwell* and *Victoria M. White* of counsel), for appellant.

*Thomas W. Ryan*, Syracuse, for respondent.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed.

Defendant furnished the prosecutor with a list of alibi witnesses seeking to have them testify before the grand jury. When presenting the case, the prosecutor told the grand jury that he had received a request from the defense asking that the grand jurors "consider and vote whether or not you want to hear from the following witnesses," and gave only their names. The foreperson asked the prosecutor, "Can we ask you anything about the witnesses? I mean were they witnesses of the crime or . . . ?" Although the prosecutor knew that the list referred to alibi witnesses, he kept that information from the grand jury and said, "I can't tell you anything. I don't know." Having been given only the names of the witnesses, the grand jury was left with no indication as to who these witnesses were or whether they could contribute anything to the case. With no basis to determine whether to call the witnesses, the grand jury voted not to hear them and ultimately returned a true bill against defendant. Upon defendant's motion, County Court dismissed the indictment with leave to re-present. This ruling was correct, considering that at the pretrial stage of the proceeding, it would not be possible to predict that the prejudice could or would be cured at trial or by guilty plea.

We agree with the lower courts that, under the circumstances of this case, the prosecutor gave an inaccurate and misleading answer to the grand jury's legitimate inquiry, thus substantially undermining the integrity of the proceeding and potentially prejudicing defendant (CPL 210.20 [1] [c]).

R.S. SMITH, J. (dissenting). I agree that the prosecutor erred in not giving the grand jury more information about defendant's proposed witnesses. I do not agree, however, that the error impaired the integrity of the grand jury proceeding and required dismissal of the indictment.

## Facts and Procedural History

The indictment in question charges defendant with murder in the second degree and criminal possession of a weapon in the second degree. A witness told the grand jury that defendant had been involved shortly before 2:00 A.M. in an altercation in a bar named Bo's Place and then, after the bar closed, in a "scuffle" in the parking lot across the street during which some shots were fired and a man was wounded. The police broke up the disturbance and the witness left, but he returned a short time later to get a car out of the parking lot. The witness then

observed parts of an encounter that ended with a fatal shooting by a man who, the witness said, looked like defendant.

Defendant's lawyer, in a letter to the prosecutor, asked "that the Grand Jury hear the testimony of several witnesses who were with the defendant after the initial altercation outside of Bo's Place." The letter listed seven such witnesses and described briefly what defense counsel expected their testimony to be. The first five, counsel said, would describe defendant's travel from the scene to the home of Lakisha Dixon and her mother, and Dixon and her mother would testify that the defendant was with them "for the rest of the morning." In short, it was clear from the letter that these seven people were offered as alibi witnesses, and Dixon and her mother were apparently the critical ones. Defense counsel's letter also asked the grand jury to call a police officer who, according to defense counsel, was in the area of the shooting but did not see the car that defendant was allegedly riding in.

At the time he received this letter, the prosecutor had a Syracuse Police Department report of an interview with Dixon, described in the report as defendant's girl friend. According to the report, Dixon at first said that she was with defendant "the entire time," but later "she admitted that she lied" and that defendant had told her to do so. According to the report, Dixon did not know when defendant came to her home on the night in question, except that it was "well after" 1:30 A.M.

The prosecutor presented to the grand jury defendant's request that Dixon and seven other witnesses be heard from, but did not give them any of the above information—neither defense counsel's predictions as to their testimony, nor the contradictory information in the police report. He simply told the grand jury that "I have received a request of the defense attorney" asking the grand jury to "consider and vote whether or not you want to hear from the following witnesses" and read the eight names. There was then some discussion, including the following:

> "THE FOREPERSON: Can we ask you anything about the witnesses? I mean were they witnesses of the crime or?

> "MR. O'DONNELL [The Prosecutor]: I can't tell you anything. I don't know.

> "THE FOREPERSON: Or the police officer, was he the one that did the arrest in the investigation?

"MR. O'DONNELL: It's improper for me to discuss even what—I'd be giving my opinion on what I'd think they would say. . . .

"THE FOREPERSON: Okay. Personal opinion; maybe you can't answer: As our legal advisor would it actually hurt the case; I mean is it better to see?

"MR. O'DONNELL: As your legal advisor it would be improper for me to—

"THE FOREPERSON: Say anything.

"MR. O'DONNELL: That should be decided amongst yourselves."

The grand jury, after deliberating, voted not to call any of the witnesses, and later voted an indictment. Supreme Court dismissed the indictment with leave to re-present, a decision which the Appellate Division and now this Court have affirmed. I would reverse, and reinstate the indictment.

## Discussion

Two statutes govern this case. The first is CPL 190.50 (6), which provides:

"A defendant or person against whom a criminal charge is being or is about to be brought in a grand jury proceeding may request the grand jury, either orally or in writing, to cause a person designated by him to be called as a witness in such proceeding. The grand jury may as a matter of discretion grant such request and cause such witness to be called . . . ."

The second governing statute is CPL 210.35, which lists the errors that render a grand jury proceeding "defective" and therefore require dismissal of an indictment. The denial of the defendant's right to request the calling of witnesses is not among the errors listed, though the denial of the defendant's own right to testify before the grand jury is (CPL 210.35 [4]). Defendant relies on the catch-all subsection, CPL 210.35 (5), which requires dismissal of the indictment where: "The proceeding otherwise fails to conform to the requirements of article one hundred ninety to such degree that the integrity thereof is impaired and prejudice to the defendant may result."

Thus, defendant is entitled to have the indictment dismissed here only if he can show both a violation of CPL 190.50 (6) and

a resulting impairment of the proceeding's integrity. In my opinion, defendant clears the first hurdle but not the second.

I agree with the majority that CPL 190.50 (6) was violated, because, like the majority, I think the grand jurors' questions about who these proposed witnesses were should have been answered. In answering them, the prosecutor had several options: He could simply have read to the grand jury the relevant portions of defense counsel's letter; he could have summarized the defense position by saying, in substance, "the defense attorney says that the first seven are alibi witnesses and the eighth a police officer who was nearby at the time of the shooting"; he could, if he chose, have answered on the basis of his own information about the witnesses—including the information from the police report of the Dixon interview—as long as he summarized it fairly. By providing no information, the prosecutor deprived the grand jury of material that would have been valuable to it in exercising its discretion as to whether the witnesses should be called.

I do not believe, however (and I do not read the majority's memorandum as suggesting), that the prosecutor's error was a deliberate attempt to stack the cards against defendant in the grand jury. It seems, rather, that the prosecutor chose an unduly conservative way of handling what he might well have seen as a tricky problem. It is understandable that he was reluctant to say to the grand jury that seven of the people listed were alibi witnesses, without mentioning that one of them had told the police the alibi was false; such a partial disclosure might have been viewed by the prosecutor as misleading, and likely to create unwarranted doubts about the quality of the case against defendant. On the other hand, the prosecutor might have been concerned that, if he told the grand jurors the contents of the police report on the Dixon interview, he would later be accused of prejudicing grand jurors against defendant. I believe the prosecutor could properly have chosen either of these alternatives, and should have chosen one of them, but I conclude that his decision to do neither was nothing worse than a good faith misjudgment.

I also do not believe that, as the majority concludes, the prosecutor gave "an inaccurate and misleading answer" to the grand jurors' questions (majority mem at 773). It would be better, of course, if he had not said "I don't know" when he did have information about what the witnesses would say, but it is clear from the context that he was not really pretending to be

totally ignorant. He twice told the grand jurors that it would be "improper" for him to say more, and he refused to give "my opinion on what I'd think they would say." The grand jurors must have understood that the prosecutor had information he was not sharing with them.

The prosecutor's reticence made it more difficult than it should have been for the grand jurors to perform their function, but it did not make it impossible. The grand jurors knew that there were eight people defendant wanted them to hear from. If they thought it was important to know what these people would say, they had the power to summon them and find out. Their choice not to do so was an exercise of the discretion committed to them by the statute. While a perfect performance by the prosecutor might have made the exercise of that discretion easier or better informed, I cannot conclude that the integrity of the grand jury proceeding was impaired.

The "integrity . . . is impaired" test of CPL 210.35 (5) is not easy to meet. It "does not turn on mere flaw, error or skewing. The statutory test is very precise and very high." (*People v Darby*, 75 NY2d 449, 455 [1990] [the test was not met where the prosecutor failed to advise the grand jurors that a statement made by defendant, ruled admissible at a *Huntley* hearing, may yet turn out to be inadmissible]; *cf. People v Calbud, Inc.*, 49 NY2d 389, 394-395 [1980].) The test should be stringent, because the dismissal of indictments for relatively minor errors can seriously interfere with the enforcement of the criminal laws. No great harm is done in this case, where the indictment was dismissed before trial, and the case can be re-presented to another grand jury. But if Supreme Court had denied the motion to dismiss the indictment, and defendant had been tried and convicted of murder in the second degree, a holding that the indictment was defective would require nullifying the conviction. We might be more reluctant to dismiss an indictment on grounds like this after a conviction has already been obtained—but it is, to say the least, unclear that the statute permits a dismissal in one case and not the other.

Our previous decisions applying CPL 210.35 (5) do not support the majority's holding. There are only two such cases in which we have found that the integrity of grand jury proceedings was impaired. One of them is *People v Huston* (88 NY2d 400 [1996]), an outrageous case in which the prosecutor intentionally put inadmissible evidence before the grand jury, told the grand jury that some witnesses were truthful and oth-

ers were perjurers, harassed and insulted witnesses, and instructed the grand jury to interpret the physical evidence in the way he preferred. The other is *People v Caracciola* (78 NY2d 1021, 1022 [1991]), in which "the prosecutor's legal instructions were too confusing to have been understood by the Grand Jury."

This case involves neither deliberate prosecutorial misconduct nor incomprehensible instructions, but a good faith error that had only limited impact on the grand jury proceedings. I believe that an error of this kind should not require dismissal of an indictment, and I therefore dissent.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSEN-BLATT and GRAFFEO concur; Judge R.S. SMITH dissents and votes to reverse and reinstate the indictment in an opinion in which Judge READ concurs.

Order affirmed in a memorandum.