OPINION OF THE COURT
Mark Dwyer, J.
Defendant moves pursuant to CPL 210.20 (1) (c) and 210.35 (4) to dismiss the indictment on the ground that the integrity of the grand jury proceeding was impaired because, contrary to the provisions of CPL 190.50, the prosecutor failed to comply with the grand jury’s direction to call defense witnesses.
Procedural Background
Defendant was arraigned on a felony complaint on August 7, 2009. At the arraignment, the People served a CPL 190.50 notice and defense counsel served a reciprocal notice indicating that defendant wished to testify. The matter was scheduled for defendant to testify on Thursday, August 13, 2009.
On August 13, defendant, who was incarcerated, was produced in the morning to testify. According to the People, at 8:50 a.m. a “waiver” was left at the security desk on the 16th floor at 320 Jay Street.[1] Two defense witnesses also appeared to testify. According to the People, these witnesses appeared with defense counsel in the afternoon on August 13. The prosecutor asked the two defense witnesses to speak with her and the witnesses declined, although they did provide the prosecutor with their dates of birth. The prosecutor informed the witnesses that they would not be allowed to testify unless they waived immunity. The witnesses agreed to waive immunity. The prosecutor next told the witnesses that if they would not speak to her, the court would appoint counsel for them, to explain the waiver of immunity. The witnesses indicated that they were willing to waive immunity and testify without having counsel assigned. Throughout the remainder of the day the prosecutor made repeated attempts to speak to the witnesses, and attempted to enlist defense counsel’s help in persuading the witnesses to speak to *619 her. She did not seek to have counsel appointed for the witnesses that day.
The defendant testified at some point in the late afternoon of August 13, concluding his testimony after 5:00 p.m. The defendant told the grand jury that he had been in Mystic, Connecticut, with friends on the night in question, and that two friends were there to testify right after him. The grand jurors asked the prosecutor if they could hear from the witnesses. The prosecutor presented the names of the proffered alibi witnesses to the grand jury and the grand jurors voted to hear from them. The witnesses were given subpoenas at 6:15 p.m. and told to appear the following morning, Friday, August 14, 2009. The prosecutor and defense counsel went to night court and obtained an extension of the CPL 180.80 release date to the following day.
The two alibi witnesses were present at the grand jury in the morning on August 14. They received no communication from the prosecutor that morning. At approximately 1:00 p.m., after once again attempting to have the witnesses speak to her, the prosecutor brought the witnesses before the justice presiding in the miscellaneous motions part and made an application for counsel to be appointed for the witnesses. The court informed the witnesses that they had a right to counsel and determined that they were eligible to have counsel appointed. One of the witnesses indicated that he did not need a lawyer. The court told him that was fine and asked him if he understood what a waiver of immunity is. The witness explained that his understanding was that if he said he did something wrong he would not have immunity. The court told him that was right, but it was better to have a lawyer explain it to him. The court then ordered that counsel be provided for both witnesses.
Efforts to locate available 18-B counsel were unsuccessful. By 4:20 p.m. on August 14, the prosecutor took the witnesses before the court once again. The prosecutor informed the court that there were no 18-B attorneys available and asked the court to explain to the witnesses that defendant might have to be kept in over the weekend unless the witnesses were willing to speak to her before she put them in the grand jury. Alternatively, the prosecutor asked for an extension of CPL 180.80. The court asked whether the prosecutor would still require waivers if the witnesses told the court the nature of their testimony, and the prosecutor indicated that would be acceptable. At that point, one of the witnesses stated that he needed counsel because there was “too much stuff going on,” that he was just trying to help, *620 that he was there to tell the truth, and that he had explained he would answer everything in the grand jury. The court attempted to determine from the prosecutor the nature of the anticipated testimony. The prosecutor asked to have the courtroom sealed and the court refused. The court asked the witnesses when they could come back to have 18-B counsel appointed and testify. One of the witnesses said he lived 2[1]k hours away, had been at court for two days, and had nowhere to stay. The court then denied the request for a CPL 180.80 extension.
The prosecutor subsequently submitted the case to the grand jury for a vote in the evening of Friday, August 14, without the testimony of the two alibi witnesses. The prosecutor told the grand jury that the witnesses they had voted to hear from the previous day were not available. The prosecutor asked the grand jury not to speculate as to why they were not available to testify. She added, “You will not be hearing from them and I am going to ask you not to draw a negative inference as to anyone as to why they aren’t here to testify. I’m also going to instruct you that you may not speculate as to what they may have testified.” The prosecutor then submitted one count to the grand jury, robbery in the first degree, and a true bill was voted.
The following Thursday, August 20, the prosecutor presented additional evidence to the grand jury establishing defendant’s prior conviction, and then submitted nine additional counts for the grand jury to consider. The grand jury voted a true bill on all charges. There was no apparent effort to reschedule the alibi witnesses to appear before the grand jury.
Defense counsel has annexed to his reply affirmation affidavits from the two witnesses stating that they did not want to speak to the prosecutor, that they were willing to sign waivers of immunity, that they did not feel that they needed attorneys, and that they were nevertheless not permitted to testify. The witness who had ultimately requested counsel stated that at the end of the second day, he told the court that he needed counsel because he thought it would speed the process along so the witnesses could satisfy the subpoena.
Defendant now moves to dismiss. He argues that the witnesses were willing to sign waivers of immunity and to appear without counsel. He points out that the appointment of counsel is a witness’s right, not a requirement. He contends that the prosecutor, by insisting that the witnesses speak to her or to counsel before she would permit them to testify, interfered with the grand jury’s request to hear from the two witnesses. The *621 defendant argues that the People may require a waiver of immunity from a witness, but have no right, once the grand jury votes to hear from a witness, to precondition that testimony on an interview with the prosecutor. Defendant submits that the People’s interference impaired the integrity of the process and prejudiced the defendant.
In response, the People contend that they made repeated attempts to speak to the witnesses and when the witnesses continued to decline to speak to the Assistant District Attorney, the People made efforts to secure attorneys for the witnesses. The People argue that one of the witnesses, at his second appearance before the court, made repeated requests for an attorney, that neither of the witnesses provided any contact information to the People, and that the witnesses failed to provide a date to the court on which they could return. Thus, the People argue, the proffered witnesses effectively blocked themselves from testifying.
The People further contend that there was no prejudice to the defendant because the prosecutor instructed the grand jury not to hold the failure of the alibi witnesses to appear against any party involved. The People told the court on August 14 that it is their “procedure to speak to witnesses pursuant to CPL 190.50 to make sure their testimony is relevant and proper in front of the grand jury.”
Legal Analysis
Dismissal of an indictment is authorized pursuant to CPL 210.20 (1) (c) and 210.35 (5) when the grand jury proceeding is defective to such a degree that the integrity of the proceeding is impaired and prejudice to the defendant may result. Dismissal is an exceptional remedy and limited to instances where prosecutorial error potentially affected the decision reached by the grand jury (People v Huston, 88 NY2d 400, 409 [1996]). However, a showing of actual prejudice is not required, only that the defect created a possibility of prejudice (id.).
The prosecutor, as legal advisor of the grand jury, is solely responsible for conducting the proceedings and has wide discretion in presenting the People’s case, determining what evidence should be presented and determining what evidence should be excluded (see People v Huston, 88 NY2d 400, 409 [1996]; People v Di Falco, 44 NY2d 482, 487 [1978]; CPL 190.25 [6]). The prosecutor functions not only as an advocate with the duty to secure indictments, but also as a public officer with an obligation to see that justice is done (see People v Lancaster, 69 NY2d *622 20, 26 [1986]; see also People v Pelchat, 62 NY2d 97, 105 [1984]). The prosecutor’s substantial control over the grand jury proceedings “requires the exercise of completely impartial judgment and discretion” (People v Di Falco, 44 NY2d at 487), and imposes a “duty of fair dealing to the accused” (People v Pelchat, 62 NY2d at 105).
As to the presentation of evidence in particular, the District Attorney is not obliged to search for evidence favorable to the defense or to present all evidence in the People’s possession that is favorable to the accused (see People v Lancaster, 69 NY2d at 25-26). Exculpatory evidence may be brought to the attention of the grand jury by the defendant through the exercise of the defendant’s own right to testify as well as the defendant’s right to request that the grand jury call as a witness a person designated by the defendant (CPL 190.50 [6]). The grand jury may grant such a request and cause such person to be called. CPL 190.50 (3) provides that if the grand jury desires to hear any witness who was not called by the People, it may direct the District Attorney to issue and serve a subpoena upon such witness, and the District Attorney must comply with such direction. But CPL 190.50 (4) provides that the prosecutor has the right to demand that any witness called by the grand jury sign a waiver of immunity. The CPL further provides that any person who appears as a witness and has signed a waiver of immunity in a grand jury proceeding has a right to an attorney (CPL 190.52 [1]).
In the case at bar, the two proposed defense witnesses refused to speak with the prosecutor. The prosecutor properly asked the grand jury to vote on whether it wanted to hear from the two alibi witnesses proffered by defendant. When the grand jury voted to hear from the witnesses, the prosecutor served them with subpoenas in accordance with CPL 190.50 (3). Before allowing the witnesses to go before the grand jury and testify, however, the prosecutor, as was her right, indicated that they would not be permitted to testify unless they each signed a waiver of immunity. The witnesses agreed to sign waivers of immunity, but the prosecutor still was not done. She continued thereafter to insist that before the witnesses testified even under a waiver of immunity, they must either speak to her about their testimony or speak to an attorney. The witnesses persisted in their unwillingness to speak to the prosecutor.
The witnesses returned the next morning, August 14, but received no communication from the prosecutor throughout the *623 morning. At approximately 1:00 p.m., the witnesses having still declined to speak to her, the prosecutor brought the witnesses before the grand jury judge to have counsel appointed for them. Efforts to locate attorneys throughout the afternoon were unsuccessful and by late in the afternoon on Friday, August 14, the situation was at an impasse. The grand jury then voted a count of robbery in the first degree without ever hearing from the witnesses.
The questions facing the court are whether nondefendant, nontarget, voluntary witnesses who are willing to sign waivers of immunity may execute such waivers without counsel, and if so, to what extent the prosecutor’s refusal in this case to allow the witnesses to testify without counsel resulted in a failure by the prosecutor adequately to comply with the grand jury’s request to hear from these two witnesses.
There is no statutory or decisional authority requiring a voluntary witness who is not a defendant or a target of a grand jury investigation to speak with an attorney before appearing in a grand jury proceeding. To be sure, a witness who is required to waive immunity has a right to counsel. Moreover, the People certainly cannot be criticized for trying, for a reasonable time, to provide counsel. In that regard, a witness testifying before a grand jury has a right to consult with counsel for the purpose of making decisions that may affect the witness’s legal rights {see People v Ianniello, 21 NY2d 418 [1968]). The role of counsel has been defined as “to give an opinion, counsel or make recommendations” (Matter of People v Riley, 98 Misc 2d 454, 458 [Sup Ct, Queens County 1979]; see also People v Enoe, 185 Misc 2d 498 [Sup Ct, Kings County 2000]; People v Smays, 156 Misc 2d 621, 625 [Sup Ct, NY County 1993]). People v Ianniello (21 NY2d 418, 424 [1968]) identified several legal rights of a witness which may be critically affected before the grand jury, concerning which the witness should be entitled to consult with counsel, including the right to assert or waive the privilege against self-incrimination, the right to refuse to answer questions having no bearing on the subject of the investigation and the right to assert a testimonial privilege such as attorney-client or doctor-patient (see also Matter of Lief v Hynes, 98 Misc 2d 817 [Sup Ct, Queens County 1979]).
Here, however, the witnesses said they were not interested in representation. There was no indication that the witnesses had any need of legal counsel with respect to their legal rights. There was no reason to believe that the witnesses were involved in *624 any criminal conduct (cf. People v Batista, 164 Misc 2d 632 [Sup Ct, Kings County 1995], revd 233 AD2d 457 [2d Dept 1996] [alibi witness was with defendant at location of arrest where stolen car recovered]), or that their testimony would be self-incriminating. These were alibi witnesses from another state. The nature of the testimony they could be expected to give was known to the prosecutor, who had heard defendant explain that at the time the crime occurred in Brooklyn, he was in Mystic, Connecticut, with these witnesses, watching a Lakers game and dining at Mystic Pizza. The prosecutor had enough information about the anticipated testimony to be satisfied that it would be relevant and exculpatory.
As to a witness’s right to be protected against perjury, a witness “does not need the advice of counsel by his side to know when to tell the truth” (Matter of Lief v Hynes, 98 Misc 2d 817, 826 [1979]). Moreover, the proffered waivers of immunity had nothing to do with potential perjury, for no grand jury witness, even one who receives transactional immunity, is immune from perjury charges.
Nonetheless, the witnesses were over the course of many hours refused permission to waive immunity and testify. Notably, one of the witnesses, during a colloquy with the presiding judge in the miscellaneous motions part, indicated that he already understood the nature of a waiver of immunity. The judge conceded that the explanation was right but said “it’s good to have a lawyer explain that to you.” The court then attempted to resolve the issue so that the witnesses could give the information to the grand jury “that they want to hear and possibly help the accused.” The judge noted that the witnesses had been waiting all day and had been there the previous day as well, and were probably “sick and tired of this.” The judge questioned the prosecutor’s need to have the witnesses sign waivers of immunity. Eventually, the prosecutor agreed to the judge’s suggestion that the witnesses tell the judge what they would say to the grand jury. Only at that point did one of the witnesses indicate that there was “too much stuff going on” and that he wanted counsel. Ultimately, the People’s insistence on speaking to or securing counsel for the witnesses, notwithstanding their offer to sign waivers, was the reason they did not get an opportunity to testify.
Given that the witnesses were in no legal jeopardy, it is unreasonable to assume that the People were motivated purely by a desire to protect the legal rights of the witnesses. It appears *625 rather that the prosecutor was determined to adhere strictly to a “procedure” in the District Attorney’s office whereby no defense witness is permitted to testify without first speaking to an Assistant District Attorney about his or her testimony. However, there was no basis for the prosecutor to believe that these witnesses’ testimony would not be relevant and proper. Though she told the grand jury judge that she needed to speak to the witnesses because she did not know what they were going to say, she certainly knew they were likely to testify that the defendant was with them in Mystic, Connecticut, watching a Lakers game.
Although the prosecutor now contends that the defense witnesses were uncooperative, unwilling to provide contact information or identify dates upon which they could return, there was no attempt to schedule an alternative time for the witnesses to come back, nor was there a refusal by the witnesses to return. When asked by the court on August 14, “When are you both going to come back for 18-b counsel and testify?” one witness said he had to check his schedule, adding that he lived 2V2 hours away and had nowhere to stay. The other witness did not answer. At that point colloquy between the court and the prosecutor resumed, and nothing regarding appointment of counsel or appearance before the grand jury was resolved. And, in fact, only one count of the indictment was voted on August 14. The remaining counts were not given to the grand jury for consideration until almost a week later, on August 20, following the presentation of additional evidence. Had the witnesses been informed that they could appear at a specific time the following week for appointment of counsel and to testify, they may well have returned.[2]
Simply put, it is the prosecutor’s obligation to secure the presence of witnesses called by the grand jury (see People v Andino, 183 Misc 2d 290 [Sup Ct, Bronx County 2000]). The People’s failure to comply with the grand jury’s direction may undermine the integrity of the proceeding and potentially preju *626 dice the defendant (see People v Hill, 5 NY3d 772 [2005] [prosecutor gave a misleading and inaccurate answer to grand jury’s inquiry regarding nature of defense witnesses’ testimony]; People v Johnson, 155 Misc 2d 791 [Sup Ct, Monroe County 1992] [prosecutor declined to call witness for erroneous legal reason]; People v Feconda, NYLJ, Dec. 28, 1990, at 25, col 6 [Sup Ct, Kings County] [prosecutor tried to secure witness’s appearance but never served witness with grand jury subpoena]). The record reflects that by late in the second day, the witnesses had been left exasperated, confused and possibly intimidated, after having waited two days to testify before the grand jury and having come to feel distrustful of the process. While the District Attorney’s “procedure” may have been established in good faith and with the purpose of protecting the rights of witnesses and preserving the integrity of the proceedings, the prosecutor’s discretion should earlier have been “tempered” with a view to achieving a fair result (see People v Shapiro, 50 NY2d 747 [1980]).
Thus, in this case, while the prosecutor complied with the letter of the statute by conveying defendant’s request to the grand jury pursuant to CPL 190.50 (6), and by serving the witnesses with subpoenas pursuant to CPL 190.50 (3) once the grand jury voted to hear from them, the inordinate delay caused by her attempts to secure counsel for the witnesses upon their refusal to speak to her, in view of their willingness to waive immunity without counsel, resulted in a failure to comply with the grand jury’s request.
Isolated instances of error will not necessarily impair the integrity of the grand jury proceedings or lead to the possibility of prejudice (People v Huston, 88 NY2d 400, 409 [1996]). Whether grand jury proceedings are defective hinges on the effect of the alleged error on the grand jury investigation and the resultant prejudice to the defendant (People v McCullough, 141 AD2d 856 [2d Dept 1988] [absence of witnesses requested could not have changed grand jury’s mind; one witness’s testimony would have been damaging to defendant and second witness not produce-able]; People v Gonzalez, 175 AD2d 810 [2d Dept 1991] [failure to present witness could not have changed minds of grand jurors regarding their decision to return an indictment]; see also People v Johnson, 289 AD2d 1008 [4th Dept 2001]).
In contrast to the above cases, in this instance the witnesses were available and apparently had strong alibi testimony to offer. The exculpatory testimony could well have changed the *627 grand jurors’ minds. The failure to present these witnesses to the grand jury could have prejudiced defendant (see People v Hill, 5 NY3d 772 [2005]). Moreover, the identification evidence in the grand jury, which the court will not detail here, was by no means powerful.
The Assistant District Attorney argues that her instruction to the grand jury not to hold against any party the failure of the two witnesses to appear cured any possible prejudice. But it is the absence of the witnesses itself, not the grand jury’s possible attribution of fault, that is the prejudice here. The little evidence linking defendant to the crime combined with the testimony from the two alibi witnesses may well have resulted in a “no true bill.” The instruction to the grand jury was inadequate under these circumstances to eliminate the possibility of prejudice.
Conclusion
In this court’s opinion, the People failed adequately to comply with the grand jury’s direction and such failure did create a possibility of prejudice by depriving the defendant of the opportunity to present exculpatory evidence to the grand jury. Defendant’s motion to dismiss the indictment is granted, with leave to the People to re-present.[3]

. Apparently defendant signed a waiver of immunity that morning.

. If the witnesses had come in to present their testimony the following week, the grand jurors were capable of setting aside the previous vote and considering the new evidence (see People v Evans, 79 NY2d 407 [1992]). In the event the grand jury retained its vote and voted the additional counts, the defendant may have had grounds to move to dismiss the indictment on account of the People’s failure to present the witnesses before the first vote (see People v Stepteau, 81 NY2d 799 [1993]; People v Evans, 79 NY2d 407 [1992]; People v Lyons, 40 AD3d 1121 [2d Dept 2007]). However, that issue is now of course not before the court.

. The court notes that had the motion to dismiss been denied, upon a motion to inspect and dismiss, count 9 would have been dismissed, because the charge was not given to the grand jury for a vote.