People v Wilcox (2021 NY Slip Op 02893)





People v Wilcox


2021 NY Slip Op 02893


Decided on May 7, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, TROUTMAN, AND DEJOSEPH, JJ.


99 KA 20-00571

[*1]THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,
v
JAMES R. WILCOX, DEFENDANT-RESPONDENT. 






GREGORY S. OAKES, DISTRICT ATTORNEY, OSWEGO (AMY L. HALLENBECK OF COUNSEL), FOR APPELLANT.


 Appeal from an order of the Oswego County Court (Walter W. Hafner, Jr., J.), dated February 7, 2020. The order, insofar as appealed from, granted that part of defendant's omnibus motion seeking to dismiss counts one and two of the indictment. 
It is hereby ORDERED that the order insofar as appealed from is unanimously reversed on the law, that part of the omnibus motion seeking to dismiss counts one and two of the indictment is denied, those counts of the indictment are reinstated, and the matter is remitted to Oswego County Court for further proceedings on the indictment.
Memorandum: As the result of a traffic stop of a vehicle in which defendant was a passenger that led to the discovery of, among other things, methamphetamine and a "one-pot" used in the manufacture of that controlled substance, defendant was indicted on charges of, as relevant here, criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09 [2]) under count one of the indictment and unlawful manufacture of methamphetamine in the second degree (§ 220.74 [2]) under count two. In his pretrial omnibus motion, as later supplemented, defendant sought, inter alia, dismissal of the indictment on several grounds. The People, as limited by their brief, appeal from an order to the extent that it granted those parts of the motion seeking to dismiss the indictment in its entirety pursuant to CPL 210.20 (1) (c) and CPL 210.35 on the ground that the grand jury proceeding was defective and seeking to dismiss count two of the indictment pursuant to CPL 210.20 (1) (b) on the ground that the evidence before the grand jury was not legally sufficient with respect to that count.
The People first contend that County Court, in dismissing the indictment pursuant to CPL 210.20 (1) (c) and CPL 210.35, erred by determining that the prosecution improperly refused to present to the grand jury defendant's request for certain witnesses, i.e., two of the vehicle's other occupants who had provided new statements ostensibly exculpating defendant. We reject that contention. "CPL article 190 governs the conduct of the grand jury and the parties which appear before that body" (People v Thompson, 22 NY3d 687, 697 [2014], rearg denied 23 NY3d 948 [2014]). "Under this statutory regime, the exclusive 'legal advisors of the grand jury are the court and the district attorney' . . . , and their decision to present certain items of evidence and to exclude others is for the most part limited only by the rules of evidence applicable at trial" (id.). "In the same vein, the prosecutor enjoys 'broad powers and duties, as well as wide discretion in presenting the People's case' to the grand jury" (id., quoting People v Huston, 88 NY2d 400, 406 [1996]; see People v Lancaster, 69 NY2d 20, 25 [1986], cert denied 480 US 922 [1987]). "Indeed, the prosecutor 'determines the competency of witnesses to testify,' and he or she 'must instruct the jury on the legal significance of the evidence' " (Thompson, 22 NY3d at 697, quoting People v Di Falco, 44 NY2d 482, 487 [1978]; see Huston, 88 NY2d at 406).
"Of course, the grand jurors are empowered to carry out numerous vital functions independently of the prosecutor, for they ha[ve] long been heralded as the shield of innocence . . . and as the guard of the liberties of the people against the encroachments of unfounded accusations from any source" (Thompson, 22 NY3d at 698 [internal quotation marks omitted]; [*2]see People v Sayavong, 83 NY2d 702, 706 [1994]; People v Minet, 296 NY 315, 323 [1947]). Thus, CPL 190.50 (3) "grants the grand jury the power to subpoena witnesses, including witnesses not called by the People, and the prosecutor must comply with the grand jury's order for such testimony" (Thompson, 22 NY3d at 698). Pursuant to that subdivision, "[i]f the grand jurors ask to hear from a witness, the prosecutor has no recourse to prevent the witness from appearing, save for a motion for an order vacating or modifying their subpoena on the ground that 'such is in the public interest' " (id., quoting CPL 190.50 [3]). "In addition, the defendant may specifically ask the grand jury to exercise its power to call a witness of his or her selection, and '[t]he grand jury may as a matter of discretion grant such request and cause such witness to be called' " (id., quoting CPL 190.50 [6]). "In the non-adversarial context of grand jury proceedings, however, the defendant's statutory power to seek the appearance of a witness is one of 'limited extent' " (id. at 698-699, quoting Lancaster, 69 NY2d at 26).
Contrary to the People's contention, "under CPL 190.50 (6)[,] the decision whether to grant a defendant's request to call a person as a witness is solely within the discretion of the grand jury," and "[t]he grand jury is given that discretion in the exercise of its function to 'uncover the facts accurately and conduct a reliable investigation' " (People v Hill, 8 AD3d 1076, 1076 [4th Dept 2004], affd 5 NY3d 772 [2005], quoting Huston, 88 NY2d at 409; see People v Baptiste, 160 AD3d 976, 978 [2d Dept 2018], lv denied 31 NY3d 1145 [2018]). The statute thus imposes an obligation on the People to inform the grand jury of a defendant's request to call witnesses, and the grand jury, not the prosecutor, is independently empowered with the prerogative to grant or deny such a request (CPL 190.50 [3], [6]; see Thompson, 22 NY3d at 699; People v Calkins, 85 AD3d 1676, 1677 [4th Dept 2011]; People v Butterfield, 267 AD2d 870, 872 [3d Dept 1999], lv denied 95 NY2d 833 [2000]; see also People v Manragh, 32 NY3d 1101, 1104-1105 [2018, Rivera, J., concurring]). In other words, a prosecutor may not "suppress[ a] defendant's request to call . . . witness[es] nor strip[ ] the grand jury of its discretion to grant or deny that request" (Thompson, 22 NY3d at 699). Instead, "[a]lthough [a] prosecutor [cannot] avoid presenting [a requested] witness's name for a vote, the prosecutor [is] free, in the role of advisor to the grand jury, to explain that the witness [does] not have relevant information [or] primarily offer[s] inadmissible hearsay testimony, and if unpersuasive in this effort, the prosecutor [may seek] a court order quashing the subpoena or limiting the witness's testimony as provided in CPL 190.50 (3)" (Manragh, 32 NY3d at 1105 n 1 [Rivera, J., concurring]; accord Thompson, 22 NY3d at 699-700). We thus conclude that the court properly determined that the People, despite their stated concerns about the admissibility of the proposed testimony, violated their statutory obligation by refusing to present to the grand jury defendant's request that two of the vehicle's other occupants be called as witnesses.
We nonetheless agree with the People that, under the circumstances of this case, the court erred in determining that the extraordinary remedy of dismissal of the indictment was warranted based on the People's failure to present defendant's request to the grand jury. A court may enforce the abovementioned statutory rules "by dismissing an indictment that 'fails to conform to the requirements of [CPL article 190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result' " (Thompson, 22 NY3d at 699, quoting CPL 210.35 [5]; see CPL 210.20 [1] [c]; People v Hill, 5 NY3d 772, 773 [2005]). "The 'exceptional remedy of dismissal' is available in 'rare cases' of prosecutorial misconduct upon a showing that, in the absence of the complained-of misconduct, the grand jury might have decided not to indict the defendant" (Thompson, 22 NY3d at 699, quoting Huston, 88 NY2d at 409, 410). "In general, this demanding test is met only where the prosecutor engages in an 'over-all pattern of bias and misconduct' that is 'pervasive' and typically willful, whereas isolated instances of misconduct, including the erroneous handling of evidentiary matters, do not merit invalidation of the indictment" (id., quoting Huston, 88 NY2d at 408; see People v Pelchat, 62 NY2d 97, 106-107 [1984]). " '[T]he statutory test, which does not turn on mere flaw, error or skewing . . . is very precise and very high' " (Thompson, 22 NY3d at 699, quoting People v Darby, 75 NY2d 449, 455 [1990]).
Here, even if the People had properly presented defendant's request and the grand jury had then voted to subpoena the witnesses, the People would have been able to vacate the first witness's subpoena pursuant to CPL 190.50 (3) because, as a codefendant under consideration by the same grand jury who had not asserted his qualified right to testify voluntarily (see CPL 190.50 [5]), he could "not be compelled to testify" (People v Cooper, 303 AD2d 776, 778 [3d Dept 2003], lv denied 100 NY2d 560 [2003]; see NY Const art I, § 6; People v Steuding, 6 NY2d [*3]214, 216-217 [1959], rearg denied 7 NY2d 805 [1959]). Similarly, although the second witness was not under consideration for indictment by the grand jury because he had already entered a guilty plea, the second witness, if subpoenaed, would have been entitled, given the contents of his new sworn statement that contradicted his original sworn statement to the police, to assert his Fifth Amendment right against further incriminating himself or exposing himself to perjury charges (see People v Jones, 176 AD3d 1397, 1398-1399 [3d Dept 2019], lv denied 35 NY3d 942 [2020]; see generally People v Cantave, 21 NY3d 374, 379-381 [2013], mot to clarify op denied 21 NY3d 1070 [2013]). Moreover, even if the witnesses had provided admissible testimony before the grand jury consistent with their new statements, such testimony would have been inculpatory in part inasmuch as those statements placed defendant in the vehicle with items used to manufacture methamphetamine. The witnesses also would have faced impeachment based on their original sworn statements to the police that had implicated defendant.
We thus conclude that "this was not one of the rare cases of prosecutorial misconduct entitling a defendant to the exceptional remedy of dismissal, because there is no showing that, in the absence of the complained-of misconduct, the grand jury might have decided not to indict the defendant" (People v Jackson, 143 AD3d 404, 405 [1st Dept 2016], lv denied 28 NY3d 1146 [2017] [internal quotation marks omitted]; see Thompson, 22 NY3d at 699). The demanding test for dismissal of the indictment based on prosecutorial misconduct was not met here inasmuch as the People did not engage in an overall pattern of willful and pervasive misconduct; instead, the failure to present defendant's request for witnesses to the grand jury constituted an isolated instance of misconduct involving, at worst, the erroneous handling of an evidentiary matter, which "do[es] not merit invalidation of the indictment" (Thompson, 22 NY3d at 699). Further, we agree with the People that the court erroneously concluded that a partially inaccurate statement by one of the prosecutors regarding the indictment status of one of the witnesses constituted pervasive misconduct warranting dismissal of the indictment.
The People also contend that they were not required to introduce to the grand jury the new statements of the requested witnesses because, contrary to the court's implicit determination, the new statements did not constitute the type of exculpatory evidence requiring presentation. We agree. "[T]he People maintain broad discretion in presenting their case to the [g]rand [j]ury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused" (People v Mitchell, 82 NY2d 509, 515 [1993]; see Lancaster, 69 NY2d at 25-26).
Here, "the allegedly exculpatory evidence neither implicated a complete legal defense nor was of such quality as to create the potential to eliminate a 'needless or unfounded prosecution' " (People v Ramjit, 203 AD2d 488, 490 [2d Dept 1994], lv denied 84 NY2d 831 [1994]). Rather, as the People correctly contend, the new statements of the witnesses recanting their original sworn statements to the police "merely relate[] to credibility, a collateral issue that generally does not materially influence a [g]rand [j]ury investigation" (People v Dillard, 214 AD2d 1028, 1028 [4th Dept 1995]; see People v Williams, 298 AD2d 535, 535 [2d Dept 2002], lv denied 99 NY2d 566 [2002]; People v Morris, 204 AD2d 973, 974 [4th Dept 1994], lv denied 83 NY2d 1005 [1994]; see generally People v Carr, 99 AD3d 1173, 1176 [4th Dept 2012], lv denied 20 NY3d 1010 [2013]). We thus conclude that, contrary to the court's implicit determination, dismissal of the indictment on the ground that the People failed to present the witnesses' new statements to the grand jury was not warranted inasmuch as the People were not obligated to present that evidence (see People v Hemphill, 35 NY3d 1035, 1036 [2020], cert granted — US — [Apr. 19, 2021]; Dillard, 214 AD2d at 1028).
The People further contend that the court erred in dismissing count two of the indictment on the separate ground that the evidence was legally insufficient to support the underlying charge of unlawful manufacture of methamphetamine in the third degree. We agree. In deciding a motion to dismiss a count of an indictment for legally insufficient evidence, a "reviewing court's inquiry is limited to 'whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crime[],' and whether 'the [g]rand [j]ury could rationally have drawn the guilty inference' . . . That other, innocent inferences could possibly be drawn from those facts is irrelevant to the sufficiency inquiry 'as long as the [g]rand [j]ury could rationally have drawn the guilty inference' " (People v Bello, 92 NY2d 523, 526 [1998]; see People v Hoffert, 125 AD3d 1386, 1387 [4th Dept 2015], lv denied 25 NY3d 990 [2015]).
Here, the grand jury charged defendant with unlawful manufacture of methamphetamine in the second degree (Penal Law § 220.74 [2]) on the ground that, having previously been convicted within the preceding five years of a qualifying methamphetamine offense, defendant committed unlawful manufacture of methamphetamine in the third degree (§ 220.73). In relevant part, "[a] person is guilty of unlawful manufacture of methamphetamine in the third degree when he or she possesses at the same time and location, with intent to use, or knowing that another intends to use each such product to unlawfully manufacture, prepare or produce methamphetamine . . . [t]wo or more items of laboratory equipment and two or more precursors, chemical reagents or solvents in any combination" (§ 220.73 [1]). The court properly determined that the evidence was legally sufficient to establish the element of possession based on defendant's presence in the vehicle and application of the automobile presumption. The court nonetheless further determined that the record was devoid of any competent evidence that defendant intended to use, or knew that another intended to use, the products to unlawfully manufacture, prepare, or produce methamphetamine. That was error.
"It is well settled that a defendant may be presumed to intend the natural and probable consequences of his actions . . . , and that the element of intent may be inferred from the totality of defendant's conduct" (People v Manigault, 145 AD3d 1428, 1429 [4th Dept 2016], lv denied 29 NY3d 950 [2017]; see People v Tai, 273 AD2d 150, 150 [1st Dept 2000]). The competent evidence before the grand jury established that defendant was located with three other passengers in a vehicle that contained numerous pieces of laboratory equipment, precursors, reagents, and solvents that were used in the manufacture of methamphetamine. Those products, which were found throughout the vehicle, included an active one-pot plastic green bottle, Sudafed medication packaging, salt, ice packs containing ammonium nitrate, a measuring spoon, napkins, electrical tape, a pipe cutter, a heating device, and tubing. The evidence also established that the vehicle contained powder residue and liquid that tested positive for methamphetamine. The grand jury thus had before it evidence that defendant had joined and remained with three other people inside a mobile methamphetamine lab. As the People correctly contend, the grand jury could have rationally inferred from those facts that defendant intended to use, or at least knew that the other occupants intended to use, these various products found throughout the vehicle to manufacture or produce methamphetamine (see People v Stone, 179 AD3d 1287, 1289-1290 [3d Dept 2020]). We thus conclude that the court erred in dismissing count two of the indictment on the separate ground of legal insufficiency.
Entered: May 7, 2021
Mark W. Bennett
Clerk of the Court